# HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* GOWRAN.

No. 27. Argued October 22, 1937.—Decided December 6, 1937.

*Assistant Attorney General Jackson* argued the cause, and *Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *Morton K. Rothschild* were on the brief, for petitioner.

*Messrs. John C. Altman* and *A. L. Nash* for respondent.

By leave of Court, *Mr. Roger S. Baldwin* filed a brief as *amicus curiae,* in opposition to the petition for a writ of certiorari.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The questions for decision concern the taxation as income of a dividend in preferred stock and the proceeds received on its sale.

On June 29, 1929, the Hamilton Manufacturing Company, a Wisconsin corporation, had outstanding preferred stock of the par value of $100 a share and common stock without par value. On that day the directors declared from the surplus earnings a dividend of $14 a share on the common stock, payable on July 1, 1929, in preferred stock at its par value. Gowran, as owner of common stock, received as his dividend 533 and a fraction shares of the preferred. On or about October 1, 1929, the company acquired his preferred stock and paid him therefor,

at $100 a share, $53,371.50. In his income tax return for the year Gowran did not treat this sum as taxable income, but included $27,262.72 as capital net gain on the shares received and sold, computing the gain under Articles 58 and 600 of Regulations 74, then in force. The Commissioner rejected that treatment of the matter; determined that the $53,371.50 received was income taxable under the Revenue Act of 1928, § 115 (g), 45 Stat. 791, 822, as a stock dividend redeemed; and assessed a deficiency of $5,831.67.

The taxpayer sought a redetermination by the Board of Tax Appeals. A division of the Board concluded, upon testimony and stipulated facts, that there had been no cancellation or redemption of the preferred stock so as to make it a taxable dividend under § 115 (g); that the transaction by which the company acquired it constituted a sale. The Commissioner secured a reconsideration of the case. He then contended that, under the rule declared in *Commissioner of Internal Revenue* v. *Tillotson Mfg. Co.*, 76 F. (2d) 189, the stock dividend was taxable, because it had resulted in a change of Gowran's proportionate interest in the company. That contention was sustained by the Board; and, on that ground, it affirmed the Commissioner's determination of a deficiency. 32 B. T. A. 820.

The taxpayer sought a review by the Circuit Court of Appeals. The Commissioner again urged that the stock dividend was taxable; and then, for the first time, contended that, even if it was not taxable, the determination of the deficiency should be affirmed, because within the tax year the stock had been sold at its par value and, as its cost had been zero, the entire proceeds constituted income. The Court of Appeals recognized that, since the dividends in preferred stock gave to Gowran an interest different in character from that which his common stock represented, it was constitutionally taxable under *Kosh-*

*land* v. *Helvering*, 298 U. S. 441; but it held that the dividend could not be taxed as income, since by § 115 (f) Congress had provided: "A stock dividend shall not be subject to tax." And it held further that no part of the proceeds could be taxed as income, since there was no profit on the sale, it being agreed that the fair market value of the stock, both at the date of receipt and at the date of the sale, was $100 a share. 87 F. (2d) 125.

Because of the importance of the questions presented in the administration of the revenue laws, certiorari was granted.

*First.* The Government contends that § 115 (f) should be read as prohibiting taxation only of those stock dividends which the Constitution does not permit to be taxed; and that, since by the dividend Gowran acquired an interest in the corporation essentially different from that theretofore represented by his common stock, the dividend was taxable. In support of that construction of § 115 (f), it is urged that Congress has in income tax legislation manifested generally its intention to use, to the full extent, its constitutional power, *Helvering* v. *Stockholms Bank,* 293 U. S. 84, 89; *Douglas* v. *Willcuts,* 296 U. S. 1, 9; that this Court holds grants of immunity from taxation should always be strictly construed, *Pacific Co.* v. *Johnson,* 285 U. S. 480, 491; and that the only reason for exempting stock dividends was to comply with the Constitution.

This preferred stock had substantially the same attributes as that involved in the *Koshland* case. There the dividend was of common stock to a preferred stockholder, it is true; but we are of opinion that under the rule there declared Congress could have taxed this stock dividend. Nevertheless, by § 115 (f) it enacted in 1928, as it did in earlier and later Revenue Acts, that "a stock dividend shall not be subject to tax." The prohibition is comprehensive. It is so clearly expressed as to leave no room

for construction. It extends to all stock dividends. Such was the construction consistently given to it by the Treasury Department.[1] The purpose of Congress when enacting § 115 (f) may have been merely to comply with the requirement of the Constitution as interpreted in *Eisner* v. *Macomber,* 252 U. S. 189; and the comprehensive language in § 115 (f) may have been adopted in the erroneous belief that under the rule declared in that case no stock dividend could be taxed. But such facts would not justify the Court in departing from the unmistakable com-

---

[1] *Eisner* v. *Macomber* was decided March 8, 1920. Soon thereafter, the Treasury Department declared, in a series of Decisions and Regulations, that no stock dividend was taxable. Treas. Dec. 3052, 3 C. B. 38 (August 4, 1920); Treas. Dec. 3059, 3 C. B. 38 (August 16, 1920); Office Dec. 732, 3 C. B. 39 (October 28, 1920). Office Dec. 801, 4 C. B. 24 (January 5, 1921) provided: "A stock dividend paid in true preferred stock is exempt from tax the same as though the dividend were paid in common stock." Then followed legislation in the precise form embodied in § 115 (f) of the Revenue Act of 1928. See § 201 (d) of the Revenue Act of 1921, 42 Stat. 227, 228; § 201 (f) of the Revenue Act of 1924, 43 Stat. 253, 255; § 201 (f) of the Revenue Act of 1926, 44 Stat. 9, 11; § 115 (f) of the Revenue Act of 1932, 47 Stat. 169, 204; § 115 (f) of the Revenue Act of 1934, 48 Stat. 680, 712. Article 628 of the Regulations in force in 1928 provided: "Stock dividends.—The issuance of its own stock by a corporation as a dividend to its shareholders does not result in taxable income to such shareholders, but gain may be derived or loss sustained by the shareholders from the sale of such stock. The amount of gain derived or loss sustained from the sale of such stock, or from the sale of the stock in respect of which it is issued, shall be determined as provided in Articles 561 and 600."

*Koshland* v. *Helvering,* 298 U. S. 441, was decided May 18, 1936. On June 22, 1936, Congress, in enacting the Revenue Act of 1936, provided in § 115 (f): "1. General Rule—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution." 49 Stat. 1648, 1688. See also § 115 (h).

mand embodied in the statute. Congress declared that the preferred stock should not be taxed as a dividend.

*Second.* The Government contends that, even if § 115 (f) be construed as prohibiting taxation of the preferred stock dividend, the decision of the Board of Tax Appeals affirming the Commissioner's determination of a deficiency should be sustained, because the gain from sale of the stock within the year was taxable income and the entire proceeds must be deemed income, since the stock had cost Gowran nothing. The Circuit Court of Appeals rejected that contention. It held that there was no income, because, as stipulated, there was no difference between the value of the stock when received and its value when sold. The court likened a non-taxable stock dividend to a tax-free gift or legacy and said: "One who receives a tax-free gift and later sells it, in the absence of statute providing otherwise, is taxed upon the profit arising from the difference in its value at the time he receives it and the sale price. Similarly one who receives a tax-free bequest, when selling it, is taxed upon the profit arising from any excess of the sale price over its fair market value at the time of receipt." [p. 128] Compare *Taft v. Bowers,* 278 U. S. 470.

The cases are not analogous. Unlike earlier legislation, § 113 (a) (2) of the Revenue Act of 1928 prescribes specifically the basis for determining the gain on tax-free gifts and legacies. It provides that: "If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift." And the basis for the computation on property transmitted at death is provided for in paragraph (5). But the method of computing the income from the sale of stock dividends constitutionally taxable is not specifically provided for. Furthermore, unlike § 22 (b) (3), excluding from gross income the value of gifts and lega-

cies, § 115 (f) cannot, in view of its history, be taken as a declaration of Congressional intent that the value of all stock dividends shall be immune from tax not only when received but also when converted into money or other property. Gain on them is, therefore, to be computed as provided in §§ 111 and 113, by the "excess of the amount realized" over "the cost of such property" to the taxpayer. As the cost of the preferred stock to Gowran was zero, the whole of the proceeds is taxable.

Gowran asserts that if this "basis of zero" theory is accepted, the proceeds are taxable not as determined by the Commissioner but as a capital gain at a different rate and under different regulations. This depends upon whether the preferred stock received as a dividend was a "capital asset," defined by § 101 (c) (8) as "property held by the taxpayer for more than two years." The record is silent as to when Gowran acquired the common stock upon which the preferred was issued as a dividend, but it may be assumed that he had held it for more than two years. For that fact is immaterial since the dividend stock had been held for only three months. Whether taxed by Congress or not, it was income, substantially equivalent for income tax purposes to cash or property, and under § 115 (b) was presumed to have been made "out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits." In no sense, therefore, can it be said to have been "held" by Gowran prior to its declaration.[2] Since the proceeds

---

[2] Article 501 of Regulations 74 states that "if the taxpayer has held for more than two years stock upon which a stock dividend has been declared, both the original and dividend shares are considered to be capital assets." But this was based upon the erroneous premise that stock dividends could not be income, and was part of an administrative scheme to apportion some of the cost of the original shares to the stock received by way of dividend. This arrangement we declared in *Koshland* v. *Helvering*, 298 U. S. 441, to be without statutory authority, and the same must be said of the Regulation involved here.

were therefore not "capital gains," they were taxable at the normal and surtax rates applicable to ordinary income.[3]

*Third.* Gowran contends here that the Government should not have been permitted by the Court of Appeals to argue its "basis of zero" theory, because that theory raised an issue not pleaded, tried, argued or otherwise referred to in the proceedings before the Board. It is true that the theory was first presented by the Commissioner in the Court of Appeals. But it does not appear by the record that objection to the consideration of this theory was made below. The only objection made there, as disclosed by the opinion, was "that the Board was without jurisdiction to decide the case upon a point not urged by the Commissioner." As to that objection, the court, after stating that the only questions submitted are those of law, said: "The Board approved the Commissioner's assessment, but did so upon a legal theory different from his. We are of opinion that the Board acted within its powers. . . . It is immaterial whether the Commissioner proceeded upon the wrong theory. The burden is upon the petitioner to show that the assessment is wrong, upon any proper theory; otherwise he must fail." [p. 127].

In the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason. *Frey & Son* v. *Cudahy Packing Co.,* 256 U. S. 208; *United States* v. *American Ry. Express Co.,* 265 U. S. 425; *United States* v. *Holt State Bank,* 270 U. S. 49, 56; *Langnes* v. *Green,* 282 U. S. 531; *Stelos Co.* v. *Hosiery Motor-Mend Corp.,* 295 U. S. 237, 239; cf. *United States* v. *Williams,* 278 U. S. 255. This

---

[3] See *Burnet* v. *Harmel,* 287 U. S. 103, 105–106; *Helvering* v. *New York Trust Co.,* 292 U. S. 455, 463; *McFeely* v. *Commissioner,* 296 U. S. 102, 106–107.

applies also to the review of decisions of the Board of Tax Appeals. *Helvering* v. *Rankin*, 295 U. S. 123, 132–133; cf. *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200, 206.[4] The taxpayer sought review of the Board's decision by the Court of Appeals. The ultimate question before that court was whether, upon the facts stipulated, the Board had erred in affirming the Commissioner's determination that the additional taxes were due. If the Commissioner was right in his determination, the Board properly affirmed it, even if the reasons which he had assigned were wrong.[5] And, likewise, if the Commissioner's determination was right, the Board's affirmance of it should have been sustained by the Court of Appeals, even if the Board gave a wrong reason for its action. By this rule the Government was entitled to urge in the Court of Appeals that on the undisputed facts the Board's decision was correct because of the "basis of zero" theory. And since that court rejected the theory, the Government was entitled to assert its contention here. Nothing in *General Utilities & Operating Co.* v. *Helver-*

---

[4] See also *Hurwitz* v. *Commissioner*, 45 F. (2d) 780 (C. C. A. 2); *Superheater Co.* v. *Commissioner*, 38 F. (2d) 69 (C. C. A. 2); *Commissioner* v. *Linderman*, 84 F. (2d) 727 (C. C. A. 3); *Dickey* v. *Burnet*, 56 F. (2d) 917 (C. C. A. 8); *Lewis-Hall Iron Works* v. *Blair*, 57 App. D. C. 364; 23 F. (2d) 972; cf. *Dobbins* v. *Commissioner*, 31 F. (2d) 935 (C. C. A. 3); *Seufert Bros. Co.* v. *Lucas*, 44 F. (2d) 528 (C. C. A. 9); *Hughes* v. *Commissioner*, 38 F. (2d) 755 (C. C. A. 10).

[5] Compare *Darcy* v. *Commissioner*, 66 F. (2d) 581 (C. C. A. 2); *Helvering* v. *Gregory*, 69 F. (2d) 809 (C. C. A. 2), aff'd, 293 U. S. 465; *Alexander Sprunt & Son* v. *Commissioner*, 64 F. (2d) 424 (C. C. A. 4); *Helvering* v. *Bowen*, 85 F. (2d) 926 (C. C. A. 4); *Atlanta Casket Co.* v. *Rose*, 22 F. (2d) 800 (C. C. A. 5); *J. & O. Altschul Tobacco Co.* v. *Commissioner*, 42 F. (2d) 609 (C. C. A. 5); *Crowell* v. *Commissioner*, 62 F. (2d) 51 (C. C. A. 6); *Schweitzer* v. *Commissioner* 75 F. (2d) 702 (C. C. A. 7), rev'd on other grounds, 296 U. S. 551; *Christopher* v. *Burnet*, 55 F. (2d) 527 (App. D. C.); *Beaumont* v. *Helvering*, 63 App. D. C. 387; 73 F. (2d) 110.

*ing, supra,* or in *Helvering* v. *Salvage,* 297 U. S. 106, is opposed to such procedure.

If the Court of Appeals had accepted the theory, it would have been open to the taxpayer to urge, in view of the new issue presented, that he should have the opportunity to establish before the Board additional facts which would affect the result.[6] As we accept the new theory, leave is granted Gowran to apply to the lower court for that purpose.

*Reversed.*

---

[6] Compare *Woodward* v. *Boston Lasting Machine Co.,* 60 Fed. 283, 63 Fed. 609 (C. C. A. 1).