JOHN H. COOK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77140.   Promulgated September 29, 1938.

*J. Nelson Anderson, Esq.,* for the petitioner.
*Lloyd W. Creason, Esq.,* for the respondent.

OPINION.

STERNHAGEN: 1. The Commissioner held that the $15,670.25 received by the petitioner in excess of the cost ($33,261.50) of the $45,000 par value of bonds is taxable as ordinary income. The petitioner urges that the gain was a "capital net gain" as defined in Revenue Act of 1928, section 101 (c) (1).[1] To succeed he must establish that the gain was "from the sale or exchange" of the bonds.

He argues that the bonds did not mature and were not redeemed in 1931; that the payment was received out of the condemnation award, and not from the bond obligor or in accordance with the terms of the bond, and that prior decisions[2] involving such circumstances and denying the use of the capital gain rate are therefore distinguishable. The argument is fallacious. The issue must be stated and met in the statutory language of sale or exchange. If there be no sale or exchange, the question whether there was a redemption is of no significance. It is no avail to a taxpayer that his case is not within the scope of earlier adverse decisions unless by showing this he also brings himself within a permissible interpretation of the words of the statute.

It is impossible to say that petitioner either sold or exchanged his bonds. By sovereign power his right as a bondholder was brought to an end and he was compensated in the specified amount. No one bought his bonds and he had no choice to hold them longer. It is only because he had held them more than two years that there is reason to think about whether the capital gain tax applies; but the

---

[1] (1) "Capital gain" means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

[2] *John H. Watson, Jr.*, 27 B. T. A. 463; *Arthur E. Braun, Trustee*, 29 B. T. A. 1161; *Ernest W. Brown*, 36 B. T. A. 178; dismissed, C. C. A., 2d Cir.; see also *United States* v. *Fairbanks*, 95 Fed. (2d) 794; *Felin* v. *Kyle*, 22 Fed. Supp. 556; *George A. Hellman*, 33 B. T. A. 901; *Francis M. Averill*, 37 B. T. A. 485. Cf. *White* v. *United States*, 21 Fed. Supp. 361; *Mary S. Childs*, 35 B. T. A. 1125, which consider the redemption of shares of stock in the light of the statutory provision that liquidation shall be treated as payment for the shares.

thought is ended when it appears that the occasion on which he received his gain was not a "sale or exchange", *Hale* v. *Helvering*, 85 Fed. (2d) 819; *Estate of George Herder*, 36 B. T. A. 934 (on review D. C. App.).

2. The second issue is badly snarled. The petitioner in 1931 received $48,994.40 from the Passaic Holding Co. in liquidation of the 910 shares which he held as the result of the distribution to him in 1926 by the New Jersey General Security Co., in which he held 280 shares; and the question is, How much of this amount is taxable gain in 1931? This question is simple enough, and, as so stated, its answer should not be difficult. But the difficulty is found in trying to adjust the treatment to be applied in 1931 to what has been done in the past.

When in 1926 the 910 shares of the Passaic Holding Co. were received from the General Security Co. this was a dividend and taxable to petitioner as such at the full value at that time of the 910 shares. It was not a "stock dividend", *Peabody* v. *Eisner*, 247 U. S. 347. Such value then became the basis to be thereafter used in lieu of cost when the 910 shares were disposed of. The liquidation which occurred in 1931 was ordained by statute to be treated as the equivalent of a sale, Revenue Act of 1928, section 115 (c); and hence the gain or loss is the difference between the $48,994.40 received and the basic value.

What that value is can not be ascertained from this record. No attempt has been made by either party to prove it, if indeed its materiality has ever been apprehended. The evidence was submitted in a written stipulation of facts filed at the hearing without much discussion or argument. The pleadings have been several times amended, the latest on both sides being filed by consent after the hearing and after the Board's memorandum opinion in the case involving 1926 had been entered and served. It can not be said, therefore, that a full hearing has not been had or that either party has had less than an adequate opportunity to prove all the facts or present all the argument necessary to support his position. For the Commissioner no brief has been filed, although by his amended answer filed after the hearing he pleads error in his treatment of the $48,994.40 and prays for an increase in the deficiency "accordingly", thus assuming the burden of proof as to the increase. The petitioner in a reply demurs. In this state of the record the decision can not be made accurately on the merits but must fall as best it can in accordance with the way it is submitted.

Apparently the income shown on the petitioner's 1931 return contained no part of the $48,994.40. The Commissioner in determining the present deficiency computed the gain by a complex computation of

cost of the 910 shares.[3] From the admitted cost of $39,812 which petitioner had originally paid for his 280 shares of General Security stock, $17,754.80 is subtracted as a nontaxable distribution in 1926 as said to have been then claimed by the taxpayer. The justification for the subtraction does not appear; the deficiency notice shows only that it is the total of 280 shares at $63.41 a share; and the stipulation states only that in his 1926 return petitioner excluded $12,715.42 "on the basis that it represented a nontaxable distribution of cash and bonds" from the General Security Co., the exclusion of which is the subject matter of Docket No. 52074. It does not appear why the $12,715.42 distribution of "cash and bonds" should have any relation to the distribution of Holding Co. shares or to the figure of $17,754.80. Proceeding with the Commissioner's computation, the remainder of $22,057.20 is treated as the total cost of the composite 280 shares of General Security and 910 shares of Passaic Holding, and of this, 50.09 percent, or $11,048.45, is allocated to the 910 Holding Co. shares as their cost basis. This may, in the absence of assignment of error and evidence, be taken as the value of the 910 shares when received. This in turn is reduced by "nontaxable distributions" in 1929 and 1930. For the entire 920 shares the "adjusted cost basis" is taken as $6,546.45 and the resulting "gain on liquidation" as $42,986.35.

The fault which the petitioner in his petition found with the Commissioner's deficiency determination was that $17,754.80 was taken as the amount excluded from income in 1926 to reduce the basis instead of the $12,715.42 which petitioner says he excluded. But, as has been said, the $12,715.42 was not thought to be the value of these 910 shares but the value of some cash and bonds. The Commissioner's affirmative claim for an increase in the deficiency is based upon a use of a so-called "zero basis" referred to in *Helvering* v. *Gowran*, 302 U. S. 238, and *Helvering* v. *Pfeiffer*, 302 U. S. 247. But that "zero basis" was applied to a "stock dividend", that is, a dividend distributed by a corporation in shares of its own stock. It is not shown to have any application to a property dividend such as this.

In such a state of the record, we can do no better than leave the deficiency where the Commissioner originally found it.

There is a third issue as to salary, which the Commissioner concedes.

Thus the determination on the first and second points is sustained, the Commissioner's affirmative claim for an increase is denied, and the determination on the third point is reversed.

*Judgment will be entered under Rule 50.*

---

[3] An additional 10 shares admittedly bought in 1928 for $650 was included in the computation; but since it is not the subject of dispute, it is not important here.