FRANK J. AND HUBERT KELLY TRUST, NORTHWESTERN NATIONAL BANK AND TRUST COMPANY OF MINNEAPOLIS, AND MRS. IRENE KELLY COLLISSON, AS TRUSTEES OF SAID TRUST, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92946. Promulgated October 25, 1938.

*Kenneth Taylor, Esq.*, for the petitioners.

*J. E. Marshall, Esq., W. Frank Gibbs, Esq.*, and *George F. James, Esq.*, for the respondent.

*John E. McClure, Esq., Pope F. Brock, Esq.*, and *Granger Hansell, Esq.*, as *amici curiae*.

## OPINION.

Opper: The parties are in virtual agreement that the test of whether the stock dividend redeemed in the tax years was [1] or was not [2] income under the Sixteenth Amendment is whether the stockholders received an interest substantially different in character or extent from that previously held.[3] Decision of this question is necessary for the resolution of the issue before us, since, if the stock dividend is income and its redemption in the instant years was in no degree a return of capital, respondent contends that its basis [4] is zero and the entire amount received thus becomes the measure of taxable income.[5]

Prior to the issuance of the dividend, petitioner's donors were common stockholders. Since there was no other class of stock outstanding their interest consisted of proportionate rights in the income of the corporation, in the powers of control, and to the proceeds of

---

[1] *Koshland* v. *Helvering,* 298 U. S. 441; *Helvering* v. *Gowran,* 302 U. S. 238.

[2] *Eisner* v. *Macomber,* 252 U. S. 189.

[3] See *Tillotson Manufacturing Co.,* 27 B. T. A. 913, 917, 918; affd., 76 Fed. (2d) 189.

[4] Revenue Act of 1934, sec. 113.

[5] *Helvering* v. *Gowran, supra.*

liquidation upon dissolution.[6] These being property rights inhering in the ownership of the capital stock, they could be disposed of collectively, but they could not be severed. If one of the stockholders "desires to dissociate himself from the company he can do so only by disposing of his stock." *Eisner* v. *Macomber, supra*, p. 209. To the description of the stockholders' interest must therefore be added the right to transfer all of the incidents of ownership, but only collectively and not individually.

Petitioner's counsel contends that after the issuance of the preferred stock all of the stockholders were in exactly the same position as before. He points out that the interest each had through the ownership of common shares was thereafter represented in the same proportion by the common and preferred shares combined, and concludes that their position before and after the dividend was as similar as it was in *Eisner* v. *Macomber, supra*. With this, however, we are unable to agree. The preferred shares were nonvoting, entitled to 7% cumulative dividends, and preferred on dissolution. It has been stated that although generally the discretion of the directors as to the payment of dividends to common stockholders will not be interfered with by a court, "different rules apply with respect to the right of holders of preferred stock to invoke the aid of a court to order the declaration and payment of dividends on their stock." *Cratty* v. *Peoria Law Library Association*, 219 Ill. 516; 76 N. E. 707, 708. If this be so, the preferred stock for this reason alone conferred upon the stockholders a new and different privilege. But entirely apart from this, the undeniable difference in the situation of the stockholders is that their interest, after the dividend, became to some extent transferable in parts where before it could be disposed of only as a whole. Before the dividend, it is true, a stockholder could have sold a portion of his common shares. But, as pointed out in the *Macomber* case, *supra*, p. 212, it is "in the nature of things impossible for one to dispose of any part of such an issue without a proportionate disturbance of the distribution of the entire capital stock." After the preferred stock was issued this was no longer true. Petitioner's donors, by transferring the preferred stock, as in fact they did, could then dispose of a part of their interest in the earnings and assets of the corporation without in any way disturbing the distribution of voting control. Or they could retain the preferred stock as representing a property interest and divest themselves of the

---

[6] "A share of stock has been defined to be a right which its owner has in the management, profits, and ultimate assets of the corporation; * * *." *Storrow* v. *Texas Consolidated Compress & Manufacturing Association*, 87 Fed. 612, 615.

powers of management. We find it impossible to conclude that this situation did not result in a substantial alteration of the interest of the stockholders. And the fact that, if they disposed of the dividend stock, their earnings from the corporation might be reduced is of no significance, since the same would be true in the event of a distribution in cash or in kind.[7]

Decisions of the Board which may be regarded as inconsistent with this position were all,[8] with one exception, announced prior to the *Koshland* case, and may well have proceeded from the acceptance as controlling of an interpretation of *Eisner* v. *Macomber*[9] which, though it later proved to be erroneous had been assumed for many years by legislative[10] and administrative[11] officials alike. In none of them was the present question considered fully. The decision that in such a situation a stock dividend has been declared, within the meaning of the revenue acts,[12] and is therefore expressly exempted from the tax was clearly justified, *Koshland* v. *Helvering, supra,* and any incidental reference to the constitutional question could as a consequence have been nothing more than dictum. The single exception, *August Horrmann,* 34 B. T. A. 1178, was decided prior to the decision of the *Gowran* and *Pfeiffer* cases in the Supreme Court, but in any event its conclusion was founded principally upon an interpretation of section 201 (d) of the Revenue Act of 1921 which, as we have said, was required by the *Koshland* decision. We accordingly conclude that although the dividend here was, upon its issuance, exempt from tax as a "stock dividend" under specific statutory direction, *Koshland* v. *Helvering, supra,* it was income and therefore taxable in its intirety upon its disposition, *Helvering* v. *Gowran, supra,* and was not constitutionally exempt from income taxation under the doctrine of *Eisner* v. *Macomber, supra.*

[7] *Lynch* v. *Hornby,* 247 U. S. 339; *Peabody* v. *Eisner,* 247 U. S. 347.

[8] *Alfred A. Laun,* 26 B. T. A. 764; *Pearl B. Brown, Executrix,* 26 B. T. A. 901; affd., 69 Fed. (2d) 602; certiorari denied, 293 U. S. 570; *Frances Elliot Clark,* 28 B. T. A. 1225; affd., 77 Fed. (2d) 89.

[9] It may be seriously doubted whether the *Macomber* case, even without later developments, can be said to constitute authority for petitioner's position. The very question now before us was foreshadowed in the dissenting opinion of Mr. Justice Brandeis in that case, and its answer unfavorably to petitioner's contention was assumed by him. This assumption was evidently no more than a premise for that further part of his discussion in which he departs from the reasoning of the majority, and in no sense, in his mind at least, a position in which he conceives himself to be at variance from them. He says "So far as the distribution may be made from its [the corporation's] own issues of bonds, or *preferred stock created expressly for the purpose,* it clearly would make no difference in the decision of the question whether the dividend was a distribution of profits, that the securities had to be created expressly for the purpose of distribution. If a dividend paid in securities of that nature represents a distribution of profits *Congress may, of course, tax it as income of the stockholder.* Is the result different where the security distributed is common stock?" [Italics added.]

[10] House Report No. 350, 67th Cong., 1st sess., p. 8; Senate Report No. 275, 67th Cong., 1st sess., p. 9.

[11] Regulations 65 and 69, arts. 1547, 1548; Regulations 74 and 77, arts. 627, 628.

[12] Revenue Acts of 1921, sec. 201 (d); 1924 and 1926, sec. 201 (f); 1928, sec. 115 (f).

Two further objections to respondent's determination are urged. The first is that, granting the proceeds of the disposition of the stock to be taxable, its basis should nevertheless not be zero, but should be apportioned out of the cost basis of the original stock. The argument is that since section 113 (b) (1) (D) of the 1934 Act requires "proper adjustment" upon the disposition of shares of stock "for the amount of distributions previously made which, under the law applicable * * * were tax-free", an adjustment will have to be made at some time in the future when the common stock is disposed of for the distribution of preferred stock which is the subject of this proceeding. The contention is that if this is done any part of the basis which would be so deducted must in fairness now be allocated to the preferred stock, as otherwise the combined bases of the two would be less than the actual cost of the original stock to the shareholder. The precise meaning of section 113 (b) (1) (D) is the subject of some discussion in the briefs of the parties. We are convinced thereby only that its meaning and application in such a situation as would exist on the disposition of the common shares is by no means clear. It will be observed that petitioner's contentions are directed not to any express statutory reference to the basis to be attributed to the preferred stock which we are considering, but proceed only by deduction from a different provision relating to subsequent disposition of the original stock. Although it is true that the *Gowran* case was decided under the Revenue Act of 1928, from which the precise language quoted was absent, it was decided subsequent to the passage of the 1934 Act and no inference is required that the provision now under consideration was the result of that decision or that the conclusion there reached would in any way have been affected had the 1934 Act been applicable. Rather we prefer to postpone consideration of petitioner's argument until a case arises in which the disposition of the original stock is involved, particularly since a reference to "proper adjustment" may be the justification for treating that situation, when it arises, with such fairness as the facts involved may require. To do otherwise would, in our view, be assuming the considerable risk that the true doctrine of the *Koshland* case may be to prevent apportioning to the dividend stock any part of the capital basis, even though expressly so directed by Congress, on the ground that "in effect it converts an income tax into a capital levy", 298 U. S. at page 445. Although this result is by no means certain, its potentiality is sufficient to dissuade us from determining in this proceeding an issue which we believe may appropriately be postponed.

Finally, it is contended in a brief filed by *amici curiae* that apportionment of the basis is required by sections 112 and 113 of the Revenue Act of 1934, on the ground that the dividend stock was distributed pursuant to a reorganization, the definition of which includes recap-

1020

italization. The same argument was inferentially rejected in *Pearl B. Brown, supra,* p. 908. Whether or not the arrangement could have been considered a reorganization, it seems to us clear that it was not made "in pursuance of a plan" as that term is used in section 112, at least in so far as this record shows. And, in any event, acceptance of this position requires us to assume that *Helvering* v. *Gowran, supra,* was erroneously decided. This we are unable to do.

Reviewed by the Board.

*Decision will be entered for the respondent.*