ALBERT E. SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

O. G. DREHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CARLTON W. SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 90266, 90267, 90268.    Promulgated January 12, 1939.

*John F. Greaney, Esq.,* for the petitioners.
*Joe D. Hughes, Esq.,* and *George W. Huntington, Esq.,* for the respondent.

## OPINION.

Van Fossan: The recently promulgated opinion of this Board in *Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014, is decisive of most of the contentions in the present case. There is a factual difference in that in *Frank J. and Hubert Kelly Trust*, the preferred stock was received as a dividend on common stock, which was the only class of stock theretofore authorized and outstanding, while in the cases at bar the class B preferred stock was received as a dividend on common, the dividend preferred stock being junior to other preferred stock authorized and outstanding at the time. This difference, we believe for present purposes, is of no effect in the face of the rule governing these cases enunciated in *Koshland* v. *Helvering*, 298 U. S. 441, and *Helvering* v. *Gowran*, 302 U. S. 238, followed in *Frank J. and Hubert Kelly Trust* and hereinafter discussed.

*Frank J. and Hubert Kelly Trust, supra,* held that the stock dividend there involved was, by statute, specifically exempt from taxation as a stock dividend (see *Helvering* v. *Gowran, supra*); and the same is true with respect to the stock dividend here in question. (Sec. 115 (f), Revenue Act of 1932.) Albeit the stock dividend is itself exempt from taxation, the question as to whether it is income (*Koshland* v. *Helvering, supra,* and *Helvering* v. *Gowran, supra*) or a proliferation of capital (*Eisner* v. *Macomber,* 252 U. S. 189) is still pertinent in order that the correct basis upon which gain or loss should be computed may be decided.

The determinative issue thus presented is whether the common stockholders received an interest substantially different in character or extent from that previously held, when they received as a stock dividend on their common stock the class B preferred stock of the same company, which was junior to other preferred stock already issued and outstanding. *Frank J. and Hubert Kelly Trust, supra; Tillotson Manufacturing Co.,* 27 B. T. A. 913, 917; affd., 76 Fed. (2d) 189.

In our opinion there is no question but that the stock received possessed substantially different attributes from the common stock. The character of the stock on its face is different. Manifestly, common stock and junior preferred stock are not possessed of the same rights. See Fletcher's Cyclopedia of the Law of Private Corporations, vol. 11, sec. 5283, and Page's Annotated Ohio General Code, secs. 8667–8671. With particular reference to the stocks here in question, we have found that holders of the common stock had the exclusive right to stock dividends; that on dissolution they were entitled pro rata to the company assets after fixed priorities and accrued dividends on preferred stock had been met; that after the stock dividend in question, the class B preferred stockholders were entitled to dividends as and when declared at the fixed rate of 7 percent per annum, payable quarterly and cumulative; that holders of class B preferred stock on dissolution were to be paid $100 per share, plus accrued dividends, before pro rata distribution was made to holders of common stock; that class B preferred was at all times junior to the so-called class A preferred; that class B preferred could at any time be repurchased by the company at the fixed price of $100 per share; and that voting rights were exclusively in holders of the common stock, except that if and when class A preferred dividends were two years in arrears then holders thereof had voting rights.

It must readily be seen that the common stockholders of the American Envelope Co., by the 30 percent dividend in class B preferred stock, payable on their stock, received new and distinct rights of a class B preferred stockholder. They were given preference rights in future income not theretofore secured to them, as well

as fixed rights on dissolution or liquidation. (Magill, Taxable Income, p. 45 et seq.) Although there is the factual difference, hereinbefore mentioned, between the case at bar and *Frank J. and Hubert Kelly Trust, supra*, the distinctions there drawn between common and preferred stock are here apposite:

Petitioner's counsel contends that after the issuance of the preferred stock all of the stockholders were in exactly the same position as before. He points out that the interest each had through the ownership of common shares was thereafter represented in the same proportion by the common and preferred shares combined, and concludes that their position before and after the dividend was as similar as it was in *Eisner* v. *Macomber, supra*. With this, however, we are unable to agree. The preferred shares were nonvoting, entitled to 7% cumulative dividends, and preferred on dissolution. It has been stated that although generally the discretion of the directors as to the payment of dividends to common stockholders will not be interfered with by a court, "different rules apply with respect to the right of holders of preferred stock to invoke the aid of a court to order the declaration and payment of dividends on their stock." *Craity* v. *Peoria Law Library Association*, 219 Ill. 516; 76 N. E. 707, 708. If this be so, the preferred stock for this reason alone conferred upon the stockholders a new and different privilege. But entirely apart from this, the undeniable difference in the situation of the stockholders is that their interest, after the dividend, became to some extent transferable in parts where before it could be disposed of only as a whole. Before the dividend, it is true, a stockholder could have sold a portion of his common shares. But, as pointed out in the *Macomber* case, *supra*, p. 212, it is "in the nature of things impossible for one to dispose of any part of such an issue without a proportionate disturbance of the distribution of the entire capital stock." After the preferred stock was issued this was no longer true. ·Petitioner's donors, by transferring the preferred stock, as in fact they did, could then dispose of a part of their interest in the earnings and assets of the corporation without in any way disturbing the distribution of voting control. Or they could retain the preferred stock as representing a property interest and divest themselves of the powers of management. We find it impossible to conclude that this situation did not result in a substantial alteration of the interest of the stockholders. And the fact that, if they disposed of the dividend stock, their earnings from the corporation might be reduced is of no significance, since the same would be true in the event of a distribution in cash or in kind.

Petitioners contended as an alternative that the recapitalization of the American Envelope Co., attendant to the issuance of the class B preferred stock, was a "reorganization" of the company within the meaning of sections 112 and 113 of the Revenue Act of 1932. Such a contention is conclusively answered in *Frank J. and Hubert Kelly Trust, supra*. It is there said:

Finally, it is contended in a brief filed by *amici curiae* that apportionment of the basis is required by sections 112 and 113 of the Revenue Act of 1934, on the ground that the dividend stock was distributed pursuant to a reorganization, the definition of which includes recapitalization. The same argument was inferentially rejected in *Pearl B. Brown, supra*, p. 908. Whether or not the arrangement could have been considered a reorganization, it seems to us clear

that it was not made "in pursuance of a plan" as that term is used in section 112, at least in so far as this record shows. And, in any event, acceptance of this position requires us to assume that *Helvering* v. *Gowran, supra,* was erroneously decided. This we are unable to do.

The *Kelly* case likewise indicates the Board's position on the question relative to the applicability of section 113 (b) (1) (D) of the Revenue Act of 1932 here injected by respondent. In that case we postponed a determination of the question until a case arises in which the disposition of the original stock is involved. We make the same ruling here.

The further issue relative to the capital or noncapital character of the gain arising from the sale of the stock received by petitioners as a stock dividend must be resolved in favor of respondent. We have held above that the stock dividend here in question is not a pure stock dividend within the case of *Eisner* v. *Macomber, supra,* and as such constitutionally exempt from tax. On the contrary, it is income. The holding period necessary to characterize it as capital gain is two years (sec. 101, Revenue Act of 1932), and as the Supreme Court has said in *Helvering* v. *Gowran, supra,* "In no sense can it [the dividend stock] be said to have been 'held' by Gowran prior to its declaration." The class B preferred stock here was sold in the same year in which the dividend was declared. The gain, therefore, is not a capital gain.

*Decision will be entered under Rule 50.*