## Midland Electric Coal Corporation, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 104657. Promulgated January 31, 1944.

*Wm. H. Cooke, Esq.*, for the petitioner.
*S. U. Hiken, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The issue presented for our decision is extremely narrow, and consists of the single question whether petitioner is entitled to the credit provided for by the terms of section 26 (c) (1) of the Revenue Act of 1936. which allows as a credit against net income for the purpose of determining surtax upon undistributed profits:

* * * an amount equal to the excess of the undistributed net income over the aggregate amount which can be distributed without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends.

The petitioner contends that it was prohibited by the terms of its mortgage, the pertinent clause of which is quoted in our findings of fact, from the payment of any dividends of any kind or from any source in an amount in excess of 50 percent of its net earnings, as defined therein. The respondent urges that the paragraph referred to merely prohibits the payment of dividends in cash out of net earnings, and that it does not prohibit the payment of dividends in any amount out of the accumulated earned surplus, or in some form other than cash, such as taxable stock dividends, so that petitioner is not entitled to any credit under the statute quoted above.

There is no question but that a valid contract in writing was executed by petitioner before May 1, 1936, which expressly dealt with the payment of dividends. Our concern is solely with the construction and effect of that contract.

The essence of the contract was that petitioner:

* * * will not declare and/or pay any dividends * * * which would thereby cause a distribution * * * of any aggregate sum in excess of fifty percent of the net earnings * * *.

Respondent cites a number of cases in which it has been held that the credit was unavailable where the contract relied on prohibited cash dividends specifically, and where there was no restriction on taxable stock dividends. *United States* v. *Dakota Tractor & Equipment*

*Co.,* 125 Fed. (2d) 20; certiorari denied, 316 U. S. 671; *Commissioner* v. *Columbia River Paper Mills,* 127 Fed. (2d) 558; *Helms Bakeries,* 46 B. T. A. 308; *Valentine-Clark Corporation,* 46 B. T. A. 821; *Oregon Pulp & Paper Co.,* 47 B. T. A. 772.

In *Valentine-Clark Corporation, supra,* the restriction was against "withdrawals from the corporate funds * * * by way of salaries, dividends, loans or advances." The parties intended that the debtor corporation should issue stock. We held that, in the light of the facts, the contract in that case was a restriction only on the payment of cash dividends. It should be noted that in that case it affirmatively appeared that the parties had no intention of restricting the declaration of stock dividends and that the phrase "withdrawals from the corporate funds" clearly connoted cash payments, especially in view of the other facts present in that case. In these respects the instant case is to be distinguished.

In each of the other cited cases the contractual restriction, by its express terms, referred only to cash dividends. The language of the contract here is decidedly different, in that it does not specifically refer to cash dividends. Whether it should be construed to mean cash dividends, or whether the language is broad enough to cover taxable dividends of every kind and from all sources, is the question which immediately confronts us.

A dividend in kind or a distribution of property by a corporation would certainly be a "dividend * * * which would thereby cause a distribution." So, also, would be a taxable stock dividend, which, since it is income, must be considered as a distribution to the stockholder of something of value. See *Helvering* v. *Gowran,* 302 U. S. 238, wherein in speaking of a dividend of preferred stock on common stock the Court says: "Whether taxed by Congress or not, it was income, substantially equivalent for income tax purposes to cash or property * * * and was presumed to have been made 'out of earnings or profits to the extent thereof * * *'."

But would the declaration and/or payment of a taxable stock dividend by petitioner "thereby cause a distribution * * * of any aggregate sum * * *?"

It is true that the word "sum" generally carries a connotation of money. However, the dictionary defines "sum" as: "The aggregate of two or more numbers, magnitudes, quantities or particulars; the amount or whole of any number of individuals or particulars added together."

Thus, the term "aggregate sum," though it may be redundant, is not limited by necessity to mean only "aggregate amounts of money." Nor is such a restricted construction of the phrase required by its context. To construe it, in this connection, as conveying no other meaning than cash or money seems too narrow in the light of the sweeping

language which precedes its use in the clause under consideration. Its use in the sense of "total value" seems more consistent with the language of the contract surrounding it.

We are therefore of the opinion that dividends in kind or taxable stock dividends would constitute "d i v i d e n d s * * * which would * * * cause the distribution of [an] aggregate sum"; and we therefore conclude that the restriction contained in the contract extended to dividends in forms other than cash, which distinguishes this case from those cited by respondent.

Nor can we agree with respondent's contention that the restriction was limited to a distribution out of net earnings. The words "any aggregate sum in excess of fifty percent of the net earnings" are used as a measure delimiting the amount of dividends which can be paid from any source, and not to describe the source from which the distribution is restricted.

Our construction of the entire clause, therefore, is that it restricted the declaration and/or payment of any taxable dividends of any kind from any source in an amount in excess of 50 percent of the net earnings of petitioner.

With reference to the amount of the credit to which petitioner is entitled, however, we approve respondent's method of computation. The parties have agreed that the "adjusted net income," within the meaning of the statute. for 1936 is $180,190.12; that the earnings computed according to the provisions of the contract restricting the payment of dividends, to an amount not in excess of 50 percent thereof, were $201,422.53, of which 50 percent is $100,711.27. The excess of the adjusted net income. as defined by statute ($180,190.12), over the aggregate of the amount which could be distributed without violating the terms of the contract ($100,711.27) is $79,478.85, which thus becomes the amount of the allowable credit.

Oral evidence was offered at the hearing which was intended to show that it was the intention of the parties to the contract to prohibit the payment of "any dividend" of any kind, beyond the amount stipulated. This evidence was admitted over the objection of the respondent, who, at the conclusion of the hearing moved to strike it from the record. This motion we took under advisement.

The case of *Pugh* v. *Commissioner*. 49 Fed. (2d) 76. urged as authority for respondent's view, has been considered and distinguished by us heretofore in *Macon, Dublin & Savannah Railroad Co.*, 40 B. T. A. 1266.

Respondent apparently hopes for a reexamination of the entire question. However, the situation here does not present a question of parol evidence contradicting or varying the terms of a written contract. On the contrary, the parol evidence was offered for the purpose of interpreting the contract and explaining the reason for the

insertion of the prohibitory clause in the contract. We are therefore overruling respondent's motion to strike. It must be observed, however, that the particular evidence in question, while admissible, is itself more ambiguous than the contract it was intended to explain, and we have in no way relied upon it in reaching our decision.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

SMITH, STERNHAGEN, VAN FOSSAN, and LEECH, *JJ.*, dissent.