**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. AZ-16-1050-JuFL |
| | ) | |
| PETER F. BRONSON and SHERRI L. BRONSON, | ) ) | Bk. No. 02:08-bk-00777-GBN |
| | ) | Adv. No. 2:09-ap-01312-GBN |
| Debtors. | ) | |
| _____ | ) | |
| PETER F. BRONSON; SHERRI L. BRONSON, | ) ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M** * |
| | ) | |
| THOMAS M. THOMPSON, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Submitted Without Oral Argument
on September 23, 2016**

Filed - October 12, 2016

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

_____

Appearances:   Appellants Peter F. Bronson and Sherri L. Bronson on brief pro se; Jimmie D. Smith on brief for appellee Thomas M. Thompson.

_____

Before:  JURY, FARIS, and LAFFERTY, Bankruptcy Judges.

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

** By order entered on August 8, 2016, a motions panel determined this appeal suitable for submission on the brief and record without oral argument.

Peter F. Bronson and Sherri L. Bronson (collectively, Debtors) appeal pro se from the bankruptcy court's order dismissing their state law claim in this adversary proceeding and ordering the adversary case closed.[1]

Appellee, Thomas M. Thompson (TMT), commenced this adversary proceeding seeking a deficiency judgment against Debtors after conducting a foreclosure of commercial property due to Debtors' default on the underlying loan. Although the bankruptcy court entered a judgment in 2011 in favor of TMT consisting of attorney's fees and a deficiency, upon reconsideration it determined that the judgment pertaining to the deficiency was entered prematurely and left the deficiency issue to be resolved by future litigation. In their motion for reconsideration of the amount of the deficiency, Debtors asserted a state law claim against TMT arising out of the deficiency litigation.

After lengthy procedural delays caused by conversion of the original chapter 11[2] proceeding to chapter 7 and several intervening appeals by Debtors, Debtors moved for summary judgment on the fair market value of the property at the time of foreclosure, which was relevant to the deficiency litigation.

---

[1] The order on appeal did more than dismiss the state law claim. Because we affirm the bankruptcy court's dismissal of the state law claim and closing of the adversary proceeding, it is not necessary to address any other issues.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are the Federal Rules of Civil Procedure.

The bankruptcy court denied the summary judgment because the value of the property presented a disputed issue of fact.

It then addressed the pending adversary on broader terms, finding that the remaining issues arose under state law and would have no impact on the administration of Debtors' bankruptcy estate because (1) the chapter 7 trustee had abandoned Debtors' state law claim against TMT and thus it was not an asset of their estate; (2) Debtors' estate had been fully administered; and (3) Debtors had received their discharge. Accordingly, the court sua sponte dismissed Debtors' state law claim for lack of jurisdiction and ordered the adversary proceeding closed.

For the reasons explained below, we conclude the bankruptcy court properly exercised its discretion in dismissing the Debtors' state law claim and closing the adversary. Accordingly, we AFFIRM.

## I. FACTS[3]

TMT was a secured creditor of Debtors. Debtors defaulted on the loan they owed to TMT. As a result, TMT commenced foreclosure proceedings against the underlying commercial property, an office building (Property), which secured the loan.

---

[3] This is the sixth pro se appeal Debtors have pursued before the Panel. The decision disposing of BAP No. AZ-12-1320, Bronson v. Thompson, 2013 WL 2350791 (9th Cir. BAP May 29, 2013), contains a lengthy recitation of facts concerning Debtors' disputes with TMT throughout this bankruptcy case. We recite here only those facts relevant to our disposition in this appeal. To the extent necessary, we take judicial notice of the pleadings filed and docketed in the underlying bankruptcy case and adversary proceeding. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-3-

In October 2007, TMT recorded a notice of trustee's sale.

On January 28, 2008, the day before the scheduled trustee's sale, Debtors filed their chapter 11 bankruptcy petition. Thereafter, TMT obtained relief from stay and held a trustee's sale, at which TMT was the successful bidder based on a credit bid of $200,000.

In October 2009, TMT filed an adversary complaint against Debtors seeking a deficiency judgment. TMT sought, among other things, attorney's fees in the amount of $31,325.10 and a deficiency in the amount of $18,574.15.

On October 28, 2011, the bankruptcy court entered a final judgment in favor of TMT, which overruled Debtors' objections to TMT's attorney fee request in the amount of $31,325.10 and found a deficiency in the amount of $18,574.15. On November 14, 2011, Debtors filed a Civil Rule 60[4] motion for relief from the judgment as it pertained to the deficiency amount, as no determination of the fair market value of the Property had been made. The bankruptcy court agreed that value had not been determined and on January 19, 2012, vacated the paragraphs in the judgment relating to the deficiency.

In their Civil Rule 60 motion and during subsequent hearings, Debtors, relying on Arizona Revised Statute (A.R.S.) § 33-814(A), asserted that the fair market value of the Property on the foreclosure date exceeded the amount due on the secured debt and thus they held a claim against TMT for the excess

---

[4] Rule 9024 incorporates Civil Rule 60.

value.[5]

On April 17, 2012, the bankruptcy court entered an order converting Debtors' case to chapter 7. The case conversion led to a controversy regarding who had standing to prosecute the state law claim which Debtors argued gave them a right to payment from TMT.

On June 26, 2012, the chapter 7 trustee (Trustee) filed a notice of abandonment of Debtors' asserted claims of "unjust enrichment" or "unconscionability" in connection with the foreclosure conducted by TMT. Trustee also sought to abandon Debtors' asserted claim for professional negligence against the attorneys involved in the stay relief obtained by TMT concerning the Property. The bankruptcy court approved the abandonment by order entered on July 23, 2012.

Meanwhile, Debtors continued to file a number of pleadings in the adversary proceeding. In May 2013, the bankruptcy court entered an order staying the proceeding, which prohibited Debtors from filing any further pleadings unless authorized by the court.

On March 28, 2014, Debtors received their discharge.

A few weeks later, Trustee filed his final report showing that the estate was administratively insolvent. Trustee was discharged. The underlying bankruptcy case remains open.

Debtors objected to Trustee's final report on the ground,

---

[5] A.R.S. § 33-814(A) sets forth the procedure for determining a deficiency claim. We do not address whether Debtors' assertion has merit under the Arizona statute and case law.

among others,[6] that he had refused to participate in the litigation with TMT. Trustee confirmed in a February 14, 2014 email to Mr. Bronson that the bankruptcy estate had no interest in the outcome of this adversary proceeding, opining that there "were no estate assets at issue, so there is nothing to abandon." On March 21, 2014, Trustee responded to Debtors' objection to his final report:

> [T]he litigation was unnecessary and functionally irrelevant since there are and will never be any funds to pay on any unsecured deficiency claim. Consequently, the [T]rustee is unwilling to participate in that litigation. If Mr. Bronson wishes to litigate it for whatever joy it brings to him, he is free to do so.
>
> Finally, as for Mr. Bronson's contention that money can be brought into the estate if it can be established that certain real property was worth more than the bid at a foreclosure sale, there is no merit to that allegation. The bid at a foreclosure sale has nothing to do with the fair market value of the property. The bid is nothing more than what the buyer is willing to pay. A bidder at a foreclosure sale can bid as little as $1.00 and, if no one bids more, the property is foreclosed for $1.00, regardless of what the property is actually worth. Mr. Bronson's assertion that proof of a greater value creates a cause of action against the bidder is little more than wishful and fuzzy thinking.

At the hearing on Debtors' objection to Trustee's final report, the bankruptcy court overruled Debtors' objection, finding that Trustee had abandoned the state law claim to Debtors.

On September 17, 2015, Debtors filed a motion for summary judgment (MSJ) in the adversary proceeding seeking to establish

---

[6] Debtors had numerous other problems with the report which are not relevant to this appeal.

the Property's fair market value on the foreclosure date. Debtors asserted that they were entitled to such a determination under A.R.S. § 33-814(A) and argued that the fair market value was higher, such that there would be no deficiency judgment and TMT would owe money to their estate. TMT filed a motion to strike the pleading on the grounds that the bankruptcy court had previously entered an order which stayed the adversary proceeding and prohibited Debtors from filing further pleadings unless authorized by the court.

On February 9, 2016, the bankruptcy court heard the matters (Final Hearing). The court denied Debtors' MSJ and denied TMT's motion to strike. In denying Debtors' MSJ which sought to establish the fair market value of the Property, the court found there were factual issues in dispute, making summary judgment inappropriate. It then more broadly addressed Debtors' claim, observing for the first time that Debtors had not filed what might have been a compulsory counterclaim. The court further recalled that Trustee refused to advance the "clearly state law cause of action," and thus it was effectively abandoned.[7] Finally, the court noted that Debtors' estate was fully administered and they had received their discharge. Under these circumstances, the bankruptcy court decided that the deficiency litigation had no impact on Debtors' bankruptcy estate and thus the court lacked jurisdiction over the matter. Accordingly, the bankruptcy court sua sponte dismissed the claim. The court

---

[7] The bankruptcy court apparently had forgotten that it had entered a formal order of abandonment and that it had advised Debtors they held the claim.

further held that even if there was a "shred" of jurisdiction, it would abstain from hearing the matter.

On February 16, 2016, the bankruptcy court entered the order reflecting its decision and ordering the clerk to close the adversary proceeding. Debtors filed a timely appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion by dismissing Debtors' state law claim and closing the adversary proceeding.

## IV. STANDARD OF REVIEW

We review a bankruptcy court's decision to decline to exercise jurisdiction over an adversary proceeding for an abuse of discretion. Carraher v. Morgan Elec., Inc. (In re Carraher), 971 F.2d 327, 328 (9th Cir. 1992). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

As a threshold matter, we note that the only ruling properly before this Panel is the bankruptcy court's decision to dismiss Debtors' state law claim against TMT and close the

-8-

adversary proceeding. Therefore, we do not consider Debtors' requests for additional relief set forth in their opening brief.

The bankruptcy court's jurisdiction is statutory. Under 28 U.S.C. § 1334(b), the district courts have original, but not exclusive, jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Congress empowered the bankruptcy courts to enter final judgment in "core proceedings." Congress provided a non-exhaustive list of core proceedings and indicated a matter may be a core proceeding even if state law may affect its outcome. See 28 U.S.C. § 157(b)(2), (3); see also Marshall v. Stern (In re Marshall), 600 F.3d 1037, 1054 (9th Cir. 2010), aff'd, 564 U.S. 462 (2011).

Among the list of core proceedings is the allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(B). A counterclaim by the estate against a person filing a claim is also core. 28 U.S.C. § 157(b)(2)(C). When Debtors were in chapter 11, TMT filed the adversary complaint against them seeking to establish the amount of his deficiency claim so that he could participate in distributions to unsecured creditors, if any, under Debtors' chapter 11 plan. Therefore, the bankruptcy court had core jurisdiction over the adversary

when it was filed.[8]

Although Debtors never filed a formal counterclaim, they began asserting affirmative rights — i.e., the right to a money judgment against TMT — at status conferences and other adversary hearings while the case was still in chapter 11. The bankruptcy court and TMT gave credence to those rights by raising the standing issue after the case was converted to chapter 7, asserting that the claim could only be prosecuted by Trustee. This assertion led to multiple attempts by both TMT and Debtors to get Trustee involved and eventually led to the estate's formal abandonment of the state law claim to Debtors. At every status conference on the adversary, which were numerous because of the delays caused by the standing issue and the multiple appeals by Debtors, the arguments about Debtors' rights in the deficiency litigation were discussed on the record. At no time did TMT argue or the bankruptcy court rule that the claim Debtors were asserting was barred as a compulsory counterclaim or had somehow been waived.

After it became clear that the chapter 7 estate would make no distribution to unsecured creditors, TMT's enthusiasm for the adversary faded. Since any claim against Debtors would be discharged and TMT would receive no money from the estate, TMT's need for a determination of the deficiency, if any, abated.

---

[8] The bankruptcy court recognized its core jurisdiction when it granted Debtors' reconsideration motion regarding the deficiency part of the final judgment on January 17, 2012. When granting the motion, it remarked: "So I don't think this litigation implicates non-core proceedings or implicates an inability on my part to enter a final order."

However, Debtors still maintained that they had a potential right to recovery from TMT if the fair market value of the Property exceeded the debt on the foreclosure date,[9] and the bankruptcy court never ruled on the claim.[10]  As such, while the main case was pending, the bankruptcy court had jurisdiction not only over TMT's deficiency claim, but also over Debtors' state law claim.

Full administration of the main case did not automatically terminate jurisdiction over the adversary.  Our circuit authority instructs us that dismissal of an underlying bankruptcy case does not automatically divest the bankruptcy court of jurisdiction over a related adversary proceeding seeking recovery on state law theories.  In re Carraher, 971 F.2d at 328.  We find no principled reason to distinguish a fully administered case, where the estate no longer has any interest in the outcome of the litigation, from a dismissed case where the same circumstance is true.

---

[9] At the Final Hearing, the bankruptcy court articulated the claim the pro se Debtors had been asserting for years:  "The Bronsons are asserting against a former secured creditor a claim that the creditor owes them money because the value of property established by a bid at a foreclosure sale was not - was significantly below true market value.  And as a result of that, the Bronsons were robbed of true market value."

[10] Because this issue was never joined, we can only speculate whether Debtors as pro se litigants had properly asserted a constructive counterclaim sufficient to maintain their right to payment in the litigation.  Additionally, Debtors submitted that Arizona case law accorded them a right to a judgment against the foreclosing creditor without the need to file an affirmative pleading.  The bankruptcy court never ruled on that issue, so it was not foreclosed as a possible outcome for the adversary.

-11-

In Carraher, the Ninth Circuit recognized the bankruptcy court's discretion to either retain jurisdiction or send the claims back to state court. In deciding whether to retain jurisdiction, the bankruptcy court must consider economy, convenience, fairness, and comity. Id. "The [bankruptcy] court's weighing of these factors is discretionary." Id. Although the bankruptcy court here did not formally use this discretionary test to dismiss the adversary proceeding and Debtor's related state law claim, we may affirm on any ground supported by the record. See Helvering v. Gowran, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."); ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014). We thus consider whether the court abused its discretion in dismissing Debtors' state law claim and this adversary under a Carraher analysis.

Judicial Economy. Although the adversary had been pending for an extended period of time and Debtors' claim had been bandied about on the record and in pleadings for years, whether state law actually supported such claim and whether Debtors were barred from asserting it as a compulsory counterclaim had never been briefed by the parties nor decided by the bankruptcy court. Additionally, assuming there was a properly raised claim, the bankruptcy court had just denied Debtors' MSJ regarding the fair market value of the Property, finding it a disputed issue of fact. Consequently, no briefing had occurred nor court time expended on the critical issues in the bankruptcy court; a state

-12-

court could just as efficiently decide those issues. Accordingly, the record amply supports dismissal under this factor.

Convenience. There is no indication in the record that a proceeding in state court would be inconvenient for either party. This proceeding was in Phoenix, and TMT's counsel was already appearing from a distance to assert his client's rights. A state court in Phoenix would not be any less inconvenient than the bankruptcy court. At worst, convenience is a neutral factor.

Fairness. Nothing in the record shows it would be unfair to send the claim to state court.

Comity. This factor most overwhelmingly favors dismissal. As the bankruptcy court noted, the claim was based entirely on state law: "This is all based on state law procedures. It's all based on state law statutes." Not only was the remaining claim one arising under a particular state statute, but also the bankruptcy estate no longer had any interest in the outcome. As the bankruptcy court stated at the final hearing:

> It's clearly a state law cause of action, which has been refused to be advanced by a bankruptcy trustee who has abandoned this cause of action. The Chapter 7 case has been closed, so the impact of this litigation has no impact whatsoever on this bankruptcy case.

The bankruptcy court properly found no reason to keep the litigation in a closed estate and articulated substantial reasons why state court was the appropriate forum for any continued litigation. Although its articulated reasons to

-13-

abstain are ineffective in the Ninth Circuit,[11] its stated rationale - "I'm going to abstain from hearing this matter. Because all this is a state law case, and I've got bankruptcy issues to hear, and we have an excellent state court judiciary as well" - fits a comity ruling perfectly.

In sum, we hold that the bankruptcy court did not abuse its discretion in dismissing Debtor's state law claim and closing the adversary.

## VI.   CONCLUSION

For the reasons stated, we AFFIRM.

---

[11] Ninth Circuit case law instructs that abstention can exist only where there is a parallel proceeding in state court. Lazar v. California (In re Lazar), 237 F.3d 967 (9th Cir. 2001) (citing Sec. Farms v. Int'l Brotherhood of Teamsters, 124 F.3d 999 (9th Cir. 1997)).  Since no state proceeding was pending, abstention could not be grounds for dismissal here.

-14-