E. M. PEET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. A. RUEHLMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 96594, 96596. Promulgated March 11, 1941.

*Raymond A. Smith, Esq.,* and *John LeRoy Peterson, Esq.,* for the petitioners.

*Benjamin L. Bird, Esq.,* for the respondent.

## OPINION.

Turner: The petitioners contend that, by reason of the agricultural depression, the change of the corporation from a long term credit business to a cash and short term credit business, which resulted in the accumulation of a large amount of cash and the decision of the stockholders in 1935 to postpone indefinitely the completion of plans for expansion, the payment of $25,000 made in 1935 by the corporation in connection with the acquisition of 2,500 shares of its stock does not come within the provisions of section 115 (g) of the Revenue Act of 1934.[1] The respondent contends that the facts here bring the payments within the provisions of section 115 (g), and that the amounts so received by the petitioners are under that section taxable as dividends.

The question whether a given payment or distribution by a corporation comes within the intendment of similar provisions of the various revenue acts has been considered in numerous cases and, as often pointed out, the question is to be determined on the facts of each individual case. The petitioners urge that there was good faith on the part of the stockholders in increasing the capital stock of the corporation in 1931 by the issuance of a large stock dividend and that there was no thought or continuing plan for a later purchase or acquisition of all or a portion of such stock dividend by the corporation. The respondent does not contend that bad faith was employed by the corporation or its stockholders. He does contend, however,

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(g) Redemption of Stock.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

that the absence of bad faith, artifice, or subterfuge or of a casual relationship between the issuance of the stock and its redemption alone is not determinative of the question. In this we think he is correct. See *J. Natwick*, 36 B. T. A. 866, and cited cases.

A consideration of the history of the corporation discloses that it began business in 1917 with an authorized capital stock of $30,000, at least $24,000 of which, if not all, was issued in that year apparently for cash; that in 1918 the authorized capital stock was increased to $60,000, all of which increase was subsequently issued, and that at least $15,545 of the increase, if not more, was issued by means of stock dividends; that in 1931 the authorized capital stock was increased to $250,000, the issuance of all of such increase of $190,000 being by means of a stock dividend. Therefore of the corporation's authorized and outstanding capital stock of $250,000 in 1931 and as late as September 1935, at least $205,545, or 82 percent, represented former earnings of the corporation. We are not informed as to what cash dividends were paid prior to 1925, but the evidence shows that during the years 1925 through 1930 the net income of the corporation amounted to $261,-398.24 and that in four years of that six-year period the corporation paid cash dividends totaling only $33,000, or approximately one-eighth of its earnings for the period. While the corporation sustained substantial losses during the years 1931 through 1933, its surplus and undivided profits amounted to $168,522.89 at the end of 1933 and by the end of 1935 had increased to $195,741.24. The amount of the corporation's cash on hand increased from $92,480.72 at December 31, 1930, to $165,695.41 at December 31, 1934, and amounted to $162,602.44 at December 31, 1935, after payment of $25,000 had been made by the corporation in acquiring shares of its stock. During the years 1933 through 1935, when the corporation was operating principally on a cash basis, the cash on hand at the end of each year was in excess of the gross from sales, both cash and credit, and substantially so at the end of the years 1933 and 1934. The net income of the corporation for 1934 was $11,198.33 and for 1935 was $15,341.95, a total of $26,540.28, or $1,540.28 in excess of the amount paid by the corporation in 1935 for its stock. Subsequent to 1930 and prior to the distribution here in question there had been no cash distribution to the stockholders. Peet testified that in their discussions the stockholders of the corporation first considered having the corporation acquire $50,000 par value of its stock, but concluded that the corporation had better retire only $25,000 par value at a time as conditions might change so as to require the corporation to extend "quite a bit" of credit. He testified further that he knew at the time the stockholders authorized the acquisition by the corporation of shares of its stock that, if the corporation declared a

cash dividend payable to himself and the other stockholders, such a distribution would be taxable to them.

In short, we find that in 1935 the stockholders of the E. M. Peet Manufacturing Co., desiring distribution of a part at least of the idle funds of the corporation and having decided to postpone indefinitely any further execution of the plan for expansion which had been the cause for capitalizing the earnings in 1931, decided to retire 2,500 shares of the stock of the corporation pro rata instead of declaring a cash dividend payable out of surplus and undivided profits as they then existed. The effect of such action was merely a reversal in part of what was done in 1931 in furtherance of a plan never carried out and a restoration of the amount represented by the said 2,500 shares of stock to earnings, followed by the payment of a dividend therefrom. It is our conclusion that the facts bring this case within the purview of section 115 (g), *supra*, and that the distributions herein are taxable to petitioners as dividends. *McGuire* v. *Commissioner*, 84 Fed. (2d) 431; certiorari denied, 299 U. S. 591, wherein a similar conclusion was reached, is in our opinion directly in point. See also *Flanagan* v. *Helvering*, 116 Fed. (2d) 937; *Hill* v. *Commissioner*, 66 Fed. (2d) 45; *Goldstein* v. *Commissioner*, 113 Fed. (2d) 363; and *William H. Grimditch*, 37 B. T. A. 402. Cf. *Commissioner* v. *Cordingley*, 78 Fed. (2d) 118; and *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156. For a contrary view holding for an extreme limitation of the application of section 115 (g), *supra*, see *Patty* v. *Helvering*, 98 Fed. (2d) 717.

Reviewed by the Board.

> *Decisions will be entered for the respondent.*

DISNEY concurs only in the result.

---

BLACK, dissenting: I respectfully dissent from the conclusion reached by the majority opinion.

Section 115 (g) quoted in the majority opinion is a familiar statute and has been often construed by the Board and the courts. In *Commissioner* v. *Cordingley*, 78 Fed. (2d) 118, in construing and applying this statute the court, among other things, said:

> * * * Under these acts it is the settled view of the Board of Tax Appeals that sums paid in retirement of stock were not taxable as dividends, unless the retirement was made in pursuance of a plan formed at the time when the stock was originally issued or as a cloak for the distribution of earnings. * * *

See also *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156. To the same effect is our decision in *Orie R. Kelly*, 36 B. T. A. 507 (reversed on another point, 97 Fed. (2d) 915). These cases, I think, lay down

860

the correct rule that section 115 (g) is only applicable where the cancellation or redemption of a corporation's stock is made in pursuance of a plan formed at the time when the stock was originally issued, or, if there is no such plan, then where the disbursement is made as a cloak for the distribution of earnings.

Of course, it requires no authority to support the proposition that the Commissioner, having in his deficiency notice determined that the redemption of the stock in question was made in such a manner as to make the redemption essentially equivalent to the distribution of a dividend, the burden of proof to show to the contrary is on petitioners. Have they met that burden of proof? I think they have. It seems to me that they have proved that the increase of capital stock of the E. M. Peet Manufacturing Co. from $60,000 to $250,000 in 1931 was for entirely legitimate business purposes and that at the time the increase was made no plan was formed for the later retirement of all or part of the stock so as to make it essentially equivalent to the distribution of a dividend. Thus the first named device in the above mentioned cases was not present.

Even though it be conceded that when the stock in question was issued, there was no such plan formed, was its later redemption determined upon in 1935 nevertheless a mere cloak for the distribution of a dividend? I willingly concede that there can be such cases even where the original issue of the stock was for entirely proper and legitimate business purposes. See *W. & K. Holding Corporation*, 38 B. T. A. 830. I think, however, that petitioners in the instant case have proved an entirely legitimate business reason for the redemption of the 2,500 shares of stock in question in 1935 and that it was not done as a cloak for the distribution of earnings. Under these circumstances it seems to me that the redemption of the stock was a partial liquidation of the corporation as defined by section 115 (i) of the Revenue Act of 1934 and should be taxed accordingly, and not taxed under section 115 (g) of the same act.

LEECH agrees with this dissent.