336

WILLIAM SWINDELLS AND IRENE G. SWINDELLS, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97172.   Promulgated April 29, 1941.

*Charles E. McCulloch, Esq.*, for the petitioners.
*John H. Pigg, Esq.*, for the respondent.

**OPINION.**

ARNOLD: The petitioners contend that the amount of gain realized by them from the redemption in 1935 and 1936 of the 53 shares and 17 shares of class B preferred stock of the Willamette Valley Lumber Co. must be determined in accordance with the provisions of section 214 (e) of the Revenue Act of 1939.[1]

The stock dividend distributed in 1934 by the Willamette Valley Lumber Co. was not taxable to the recipients thereof. Sec. 115 (f), Revenue Act of 1934; *Helvering* v. *Gowran*, 302 U. S. 238.

The petitioners must prevail (*Kelly's Trust* v. *Commissioner*, 106 Fed. (2d) 1002; 38 B. T. A. 1014; *Gerlinger* v. *Commissioner*, 106 Fed. (2d) 997; and *Smith* v. *Commissioner*, 107 Fed. (2d) 1020; 39 B. T. A. 80, each remanded to the Board for further proceedings in accordance with the provisions of section 214 of the Revenue Act of 1939) unless the proceeds received upon redemption are taxable under section 115

---

[1] SEC. 214. BASIS OF STOCK DIVIDENDS AND STOCK RIGHTS.

\* \* \* \* \* \* \*

(e) BASIS UNDER PRIOR ACTS.—The following rules shall be applied, for the purposes of the Revenue Act of 1938 or any prior revenue act as if such rules were a part of each such Act when it was enacted, in determining the basis of property acquired by a shareholder in a corporation which consists of stock in such corporation, or rights to acquire such stock, acquired by him after February 28, 1913, in a distribution by such corporation (hereinafter in this subsection called "new stock"), or consisting of stock in respect of which such distribution was made (hereinafter in this subsection called "old stock") if the new stock was acquired in a taxable year beginning before January 1, 1936, or acquired in a taxable year beginning after December 31, 1935, and its distribution did not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution:

(1) The basis of the new stock and of the old stock, respectively, shall, in the shareholder's hands be determined by allocating between the old stock and the new stock the adjusted basis of the old stock; such allocation to be made under regulations which shall be prescribed by the Commissioner with the approval of the Secretary.

\* \* \* \* \* \* \*

(f) DETERMINATION UNDER PRIOR ACTS OF PERIOD FOR WHICH HELD.—For the purposes of the Revenue Act of 1938 or any prior revenue act, in determining the period for which the taxpayer has held stock or rights to acquire stock, received upon a distribution, if the basis of such stock or rights is determined under section 214 (e) (1) of the Revenue Act of 1939, there shall (under regulations which shall be prescribed by the Commissioner with the approval of the Secretary) be included the period for which he held the stock in the distributing corporation prior to the receipt of such stock or rights upon such distribution. This subsection shall be applicable as if it were a part of each such Act when such Act was enacted.

(g) of the Revenue Acts of 1934 and 1936,[2] as contended by the respondent.

In determining the gain realized by the petitioners on the redemption of the stock involved the respondent applied a zero basis and held that the period for which the dividend stock was held did not include the period for which the common stock was held. This would be correct, *Helvering* v. *Gowran, supra;* and *Koshland* v. *Helvering*, 298 U. S. 441, were it not for the provisions of section 214 of the Revenue Act of 1939. In his amended answer the respondent affirmatively alleges that the redemption and retirement of the 53 shares of class B preferred stock in 1935 and of the 17 shares of class B preferred stock in 1936 by the Willamette Valley Lumber Co. was essentially equivalent to the distribution of a taxable dividend under section 115 (g), *supra*, that the amounts of $5,300 and $1,700 constituted taxable dividends to petitioners in 1935 and 1936, respectively, and that the deficiencies in tax would therefore be no less than $100.06 for 1935 and $148.92 for 1936. He made claim for the increased deficiency for 1936 of $148.92 instead of $80.92.

George T. Gerlinger, the president of the company, testified that it was found that the capital of $500,000 was not favorable to certain large deals and contracts and in the purchase of timber and that therefore it was decided to increase the capital stock of the company to about 1913 values of approximately $820,000. He also testified that certain of the stockholders were, due to financial reverses, in urgent need of funds or means of obtaining credit and that, since it was not desired that such stockholders dispose of their common stock, which might affect the equal stock control as between the Clark and Gerlinger families, preferred stock was issued which could be used as collateral. He stated: "We could not declare cash dividends and we wanted to preserve at all times the common stock relationship, and we didn't want them selling [common] stock in order to realize that money if they had to have it, so we put part of it in preferred." It appears that the increase of the capital stock was motivated by two objectives—one, the improvement of the company's financial and business standing, and, two, the extension of financial assistance to stockholders in need thereof by distributing to them profits of the company in the form of preferred stock to be used as collateral or redeemed if the need for funds was urgent. The preferred stock was set up as capital and redeemed out of earnings and profits accumulated subsequent to February 28, 1913. It is apparent that the redemption

---

[2] (g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

and retirement of the class B preferred stock was made in pursuance of a plan to distribute earnings and profits formed at the time when such stock was issued and hence the amounts received by petitioners on redemption of their class B preferred stock were taxable as dividends under section 115 (g). See *Commissioner* v. *Cordingley*, 78 Fed. (2d) 118. That the redemption was not made pro rata among the preferred stockholders is not a controlling factor. *Leopold Adler*, 30 B. T. A. 897, 906. It does show, however, a consummation of the original plan to assist, by distribution of cash, those who needed such aid most urgently. The fact that a business purpose was associated with the distribution of the stock dividend in 1934 does not make the redemption of the class B preferred stock any the less "essentially equivalent to the distribution of a taxable dividend * * * to the extent it represents a distribution of earnings or profits" under the statute. The question before us is the taxable effect on a stockholder upon the redemption of class B stock. The redemption of the stock pursuant to a plan to distribute earnings and profits formed at the time the stock was issued is the controlling element. The redemption was not for a business purpose of the corporation, but was solely a part of the means adopted for the distribution of earnings and profits of the corporation to its stockholders for their own personal use. In our opinion the evidence shows that the class B preferred stock involved herein was redeemed "at such time and in such manner" as to make the redemption "essentially equivalent to the distribution of a taxable dividend" under section 115 (g). See *E. M. Peet*, 43 B. T. A. 852. No useful purpose would be served by discussing the many cases cited by both parties, as the solution of each case depends upon its own peculiar facts. *McGuire* v. *Commissioner*, 84 Fed. (2d) 431; certiorari denied, 299 U. S. 591.

*Decision will be entered under Rule 50.*