Estate of Henry Vernon Foster, Deceased, Marie Dahlgren Foster, Executrix, v. Commissioner.
Estate of Foster v. Commissioner
Docket No. 110891.
United States Tax Court
1944 Tax Ct. Memo LEXIS 321; 3 T.C.M. (CCH) 249; T.C.M. (RIA) 44091; March 22, 1944
*321 Villard Martin, Esq., 425 Nat. Bank of Tulsa Bldg., Tulsa, Okla., for the petitioner. Stanley B. Anderson, Esq., for the respondent. ARNOLD Memorandum Opinion ARNOLD, Judge: This proceeding involves an income tax deficiency for 1940 of $19,561.81. The issue is whether $30,000 received by the decedent's estate in 1940 represented proceeds from the sale of 500 shares of stock of the Foster Petroleum Corporation to the latter, or whether it represented the redemption of that stock at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend within the meaning of section 115(g) of the Internal Revenue Code. The facts as stipulated, are adopted as our findings of fact, and the pertinent portions thereof are hereinafter summarized. [The Facts] Henry Vernon Foster died testate June 5, 1939, a resident of Washington County, Oklahoma. His last will and testament was probated in the County Court of said county and Marie Dahlgren Foster, the executrix named in the will, was issued letters testamentary by the court. The Federal income tax return here involved was filed with the collector of internal revenue at Oklahoma City, Oklahoma. The *322 Foster Petroleum Corporation, sometimes hereinafter referred to as the corporation, was organized in 1924 as an oil and investment company under the laws of Delaware. Included in the estate of the decedent at the time of his death were 51,750 shares of Class A stock and 73,250 shares of Class B stock of the Foster Petroleum Corporation. The two classes of stock are in all respects the same except that the holders of Class B stock have no voting rights with respect thereto. Prior to December 30, 1940, 3,250 shares of the 73,250 shares of Class B stock belonging to decedent's estate were evidenced by certificate number 49B. On December 30, 1940, this certificate was endorsed by Marie Dahlgren Foster, executrix of the estate of Henry Vernon Foster, deceased, and delivered to the corporation. The stock evidenced by certificate 49B was reissued to the executrix in two certificates, number 50B for 500 shares and number 51B for 2,750 shares. The executrix of the decedent's estate was "authorized and empowered" by the Fifth paragraph of the testator's will "to sell, contract to sell, assign, transfer, convey and lease any part of my estate" with exceptions not here material, "provided it *323 is for the best interest of my estate so to do, and provided further that my Executrix or Executrixes may not sell, dispose of or encumber the Class 'A' voting stock of the Foster Petroleum Corporation unless * * *." On December 30, 1940, the executrix filed in the County Court an instrument entitled "Return of Sale of Personal Property." It is therein recited that the executrix, pursuant to the authority granted by decedent's will and after "having determined it to be for the best interest of said estate, did on the 30th day of December, 1940, sell at private sale to Foster Petroleum Corporation, a Delaware corporation, five hundred (500) shares of Class B Common Stock of Foster Petroleum Corporation, belonging to said estate, for the sum of Thirty Thousand Dollars ($30,000.00), in cash, subject to confirmation of this Court, and that the price received for said stock is not disproportionate to the value of said stock and a greater amount can not be obtained." On December 30, 1940, the County Court ordered that "the sale be, and is hereby, approved, confirmed and declared valid, and * * * [the executrix] * * * is hereby authorized and directed to assign, transfer and deliver said *324 stock, and the certificate or certificates representing the same, to Foster Petroleum Corporation, upon receipt of the purchase price thereof." The Foster Petroleum Corporation paid the executrix of the decedent's estate $30,000 in connection with the transaction on December 30, 1940. The transaction was initiated by the executrix for the purpose of providing funds for the estate needed for the payment of obligations of the estate and expenses of administration. There was no plan of redemption of said 500 shares of stock at the time of its issuance, and such shares are still held by the corporation as treasury stock. There was no pro rata or other distribution to other stockholders and the corporation acquired no stock from any other stockholder. At all times since its organization the corporation has operated at a profit and there has never been, and was not at December 30, 1940, any policy of contraction or liquidation, and no question of liquidation is here involved. The stockholders of the corporation immediately prior to the December 30, 1940, transaction were as follows: Owner
Class A
Class B
Trustees of Henry
Vernon Foster
Trust
100,000 shares
Marie Dahlgren
Foster
5,750 shares
19,250 shares
Estate of Henry
Vernon Foster,
deceased
51,750 shares
73,250 shares
*325 The original paid-in capital of the corporation was $3,381,496.49. The authorized capital of the corporation was 300,000 shares of no par value. In 1931 the certificate of incorporation of the Foster Petroleum Corporation was amended to provide an authorized common capital stock of $40,000,000 divided into 100,000 shares of Class A voting and 300,000 shares of Class B non-voting common capital stock, each of a par value of $100 per share. The reorganization of the capital structure was completed in June 1931, at which time surplus arising from the sale of capital assets in the amount of $16,685,740.25 was transferred to the capital stock account, together with $2,932,763.26 from accumulated earned surplus, which with the original paid-in capital provided a total outstanding capital stock of 230,000 shares of a par value of $23,000,000. The shareholders were issued 57,500 shares of Class A stock and 172,500 shares of Class B stock, aggregating a total par value of $23,000,000 in exchange for the 300,000 no-par value shares outstanding. On December 15, 1932, a stock dividend of 15,000 shares was declared, increasing the outstanding capital stock to $24,500,000. On December 28, 1934, *326 a stock dividend of 5,000 shares was declared increasing the outstanding capital stock to $25,000,000. On April 15, 1940, the certificate of incorporation of the Foster Petroleum Corporation was amended to reduce the par of all stock from $100 to $50 per share, and $12,500,000 was transferred from capital to earned surplus. As of December 31, 1940, the books of the corporation reflected its capital and surplus as follows: Capital (250,000 shares)
$12,500,000.00
Surplus
12,414,830.62
Total
$24,914,830.62 Of the above total $3,381,496.49 is paid-in capital and the remainder represents earned surplus, all accumulated since July 1, 1924. Prior to May 6, 1932, the capital stock of the corporation was owned 90 percent by Henry Vernon Foster and 10 percent by his wife, Marie Dahlgren Foster. On May 6, 1932 Henry Vernon Foster created a trust to which he transferred 40 percent of the stock of the corporation. From the creation of the trust to December 30, 1940 the stock of the corporation was owned: 50 percent by Henry Vernon Foster, or the estate of Henry Vernon Foster, deceased; 40 percent by the Trustees of the Henry Vernon Foster Trust; and 10 percent by Marie Dahlgren Foster. *327 Henry Vernon Foster and the Washington Trust Company, Westerly, Rhode Island, were the original trustees under the trust created May 6, 1932. Marie Dahlgren Foster succeeded Henry Vernon Foster as individual trustee and the Equitable Trust Company of Wilmington, Delaware, succeeded the Washington Trust Company as corporate trustee. The original trust corpus of 92,000 shares of Class B stock was augmented to 100,000 shares by the stock dividends hereinabove referred to. The net income after federal income tax and the dividends paid by the Foster Petroleum Corporation for the years 1931 to 1940, inclusive, are as follows: Net income after
Year
federal tax
Dividends paid
1931
$ 818,204.31
$ 690,000.00
1932
425,013.69
230,000.00
1933
408,700.24
245,000.00
1934
762,067.93
470,000.00
1935
629,496.43
250,000.00
1936
703,038.38
500,000.00
1937
370,563.44
250,000.00
1938
490,540.32
187,500.00
1939
461,805.73
250,000.00
1940
545,922.15
475,000.00
Totals
$5,615,352.62
$3,547,500.00
The balance sheet of the Foster Petroleum Corporation as of December 31, 1940 showed the total assets of its investment and oil and gas business as $25,497,320.23, with assets *328 in the investment division aggregating $23,259,490.13 and the assets in the oil and gas division aggregating $2,237,830.10. The value of the Class B stock of the corporation belonging to the estate of Henry Vernon Foster, deceased, was determined by the respondent subsequent to December 30, 1940, to be $73.44 per share for federal estate tax purposes. The respondent in determining the deficiency treated the transaction whereby Foster Petroleum Corporation paid the decedent's estate $30,000 in exchange for 500 shares of Class B stock of the corporation as a redemption of such stock in such manner as to make the proceeds a distribution of surplus taxable as a dividend under section 115(g) of the Internal Revenue Code. He increased petitioner's net income, as disclosed by its return, by "Dividends - $30,000.00," and reduced the net income by $3,560.00, representing "Net long-term capital gain overstated." The transaction of December 30, 1940, between the corporation and the executrix of decedent's estate was a sale of 500 shares of Class B stock of the corporation for $30,000 cash. It was not a redemption of stock at such time and in such manner as to be essentially equivalent to *329 the distribution of a taxable dividend under section 115(g) of the Internal Revenue Code. Section 115 of the Internal Revenue Code deals with corporate distributions. Subsection (g) thereof, which appears in the margin, [1] deals specifically with the redemption of corporate stock at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend. Whether corporate stock has been redeemed at a time and in a manner essentially equivalent to the distribution of a taxable dividend has been litigated in numerous cases before the courts. No single decisive test or rule has been announced by the decided cases. Generally the decisions have turned upon the particular facts and circumstances of each case, Hirsch v. Commissioner, (CCA-9) 124 Fed. (2d) 24; McGuire v. Commissioner, (CCA-7) 84 Fed. (2d) 431, certiorari denied 299 U.S. 591; E. M. Peet, 43 B.T.A. 852; see also section 19.115-9, Regulations 103, but as pointed out in Flanagan v. Helvering, (CADC) 116 Fed. (2d) 937, *330 different judicial criteria have been invoked in applying section 115(g). In this case we have found as our ultimate fact that the transaction between the decedent's estate and the corporation was a sale and not a corporate distribution. The facts and circumstances surrounding the sale convince us that the primary purpose of enacting section 115(g), namely, "to prevent the distribution of corporate earnings free from the tax upon ordinary dividends," DeNobili Cigar Co., 1 T.C. 673, 678, will in no way be thwarted by our reversal of respondent's determination. We find no indication that the transaction of December 30, 1940, was an effort, plan or scheme, to distribute corporate earnings in such manner that corporate earnings would be freed from tax as ordinary dividends. It must be remembered that the corporation had a stipulated earned surplus accumulated since July 1, 1924, in excess of $21,000,000. The selling price of the 500 shares is, by comparison, a mere pittance and evidences no plan or scheme whatever to distribute earnings. It must be further remembered that the corporation paid dividends in 1940 of $475,000 and that its average annual dividend *331 from 1931 to 1940, inclusive, was $354,750. In our opinion the stipulated facts indicate a corporate policy of distributing a large part of its earnings and plowing the remainder thereof back into its investment and oil and gas business. The transaction of December 30, 1940, was in no sense a pro rata distribution to stockholders. The corporation acquired no stock from any other stockholder, and the 500 shares acquired from decedent's estate are still held by the corporation as treasury stock. There was no corporate policy of contraction or liquidation at the time Foster Petroleum Corporation purchased *332 the 500 shares, and there was no plan of redemption of the 500 shares at the time of their issuance. The transaction of December 30, 1940 was an isolated transaction which purported to be and was a sale, William A. Smith, 38 B.T.A. 317. It was so recognized by the County Court which approved, confirmed and declared the sale valid. All the necessary elements of a sale were present, and we are not persuaded by the presence of certain of the judicial criteria considered in Flanagan v. Helvering, supra, and in numerous other cases cited by the respondent, that the net effect of this transaction was a distribution essentially equivalent to a taxable dividend. The proportional ownership of the shareholders was changed by the sale, a fact conceded by respondent but brushed aside because the change was so slight. In our opinion a sale was intended and a sale was consummated. R. W. Creech, 46 B.T.A. 93. The sale was not followed by "complete cancellation or redemption" of the 500 shares as the stock was not retired but was held by the corporation as treasury stock. Such holding is consistent with *333 a purchase and sale transaction, and inconsistent with a distribution of earnings in cancellation or redemption, W. C. Robinson, 42 B.T.A. 725, 736. Decision will be entered for the petitioner. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
(g) Redemption of Stock. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.↩