## BALTIMORE & O. R. CO. v. WESTERN UNION TELEGRAPH CO.

(Circuit Court of Appeals, Second Circuit. May 8, 1917.)

No. 252.

TELEGRAPHS AND TELEPHONES ☞32—REGULATION—FREE MESSAGES—CONTRACT WITH RAILROAD.

In 1887 a railroad company and a telegraph company entered into a contract, whereby the railroad company should transport men and material and furnish labor to the telegraph company without limit for the erection and maintenance of a telegraph system on the railroad company's property, the telegraph company in turn agreeing to transmit orders and intelligence along the railroad company's property without limit, so far as the maintenance and traffic management of the railroad was concerned; each company agreeing further to serve the other with regard to that other's business in respect to matters not directly connected with the line of railroad along which the telegraph lines were extended. The two kinds of work were known as "on line business" and "off line business"; there being stated periods for accounting for the off line business, at which time balances were discharged at a rate of settlement or exchange fixed at one-half of the ordinary rate of each party. Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379, as amended by Act June 18, 1910, c. 309, § 7, 36 Stat. 546, so as to apply to telegraph companies, declares that nothing shall be construed to prevent telephone, telegraph, and cable companies from entering into contracts with common carriers for the exchange of services. *Held* that, in the absence of fraud, the agreement was not objectionable under the Interstate Commerce Act; each company having the right to fix the value of the services of each to the other.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 18.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Baltimore & Ohio Railroad Company against the Western Union Telegraph Company. From a decree for complainant (241 Fed. 162), defendant appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rush Taggart, of New York City, for appellant.

Joseph W. Folk, of Washington, D. C., amicus curiæ.

J. Du Pratt White, of New York City (George F. Brownell, of New York City, amicus curiæ), for appellee.

Before WARD, ROGERS and HOUGH, Circuit Judges.

PER CURIAM. The real contest in this case is between the plaintiff and defendant on one side and the Interstate Commerce Commission on the other, and the sole question presented in argument or by assignment of error is whether, under the act to regulate commerce, as amended June 18, 1910, it is lawful for railway and telegraph companies to observe the terms of a contract made between them (and lawful when made) long before passage of the statute referred to. We express no opinion on any other point.

The District Court (Mayer, J,) has written an ample and correct statement of facts taken from the pleadings—the hearing below having been on bill and answer. With the premises and conclusions of the trial judge we agree. The railroad and the telegraph became instrumentalities of commerce at substantially the same time. They advanced hand in hand, and agreements by which each agreed to serve the other for the common benefit have been known and observed for more than two generations. Indeed, they long ago became but parts of one system, so far as the public was concerned.

The parties hereto made a written agreement in 1887, which is still unattacked except in one point, which may be summarized as follows: The Railroad Company transports men and material and furnishes labor to the Telegraph Company, without limit, so far as the erection and maintenance of the telegraph system on the railroad company's property is concerned. The Telegraph Company in turn transmits orders and intelligence along the Railroad Company's property, also without limit, so far as the maintenance and traffic management of the railroad is concerned; and each company further serves the other with regard to that other's business in respect of business matters not directly connected with the line of railroad along which the telegraph lines extend. These two kinds of work are commonly known, the former as "on line" business, the latter as "off line" business. At stated periods the amount of "off line" business transacted by each for the other is ascertained and balances discharged (as in a clearing house) at a rate of settlement or exchange fixed at one-half of the ordinary rates of each party to the agreement. The right to do this is the only question in this case.

Not until the amendment of 1910 were telegraph companies subject to the Commerce Acts and the jurisdiction of the Commission. By a proviso in that statute (section 7) it was declared that:

"Nothing in this act shall be construed to prevent telephone, telegraph and cable companies from entering into contracts with common carriers for the exchange of services."

In our opinion (in the absence of fraud) the right to exchange implies the right to fix the rate, method, or amount of exchange. The agreement being to exchange the carriage of goods against the trans-

mission of intelligence, each party has the further right to fix the value of the services of each to the other; it makes no difference whether for convenience they ascertain that value by the usual money measurement or adopt some other course. If it were shown that this contract, or any other agreement, were being used as a cover for injuring one party or the public, other rules would apply.

Nothing of the kind being suggested, the decree is affirmed.