Edith B. Bass, Petitioner, *v.* Commissioner of ·Internal Revenue, Respondent.

Docket No. 105220.    Promulgated December 30, 1941.

*Edward C. Thayer, Esq.,* and *E. Barton Chapin, Esq.,* for the petitioner.

*Charles P. Reilly, Esq.,* for the respondent.

OPINION.

MURDOCK: The petitioner argues that there was a recapitalization which, under the definition in section 112 (g) (1) (D) of the Revenue Act of 1936, amounted to a reorganization and there was an exchange of stock for stock within section 112 (b) (3), so that no gain or loss from the transaction can be recognized. The Commissioner is not contending that taxable gain resulted from the transaction. He has determined that the issuance of the preferred stock to the holders of the common stock was a taxable dividend, and the issue is whether or not that determination is correct. The petitioner's argument is somewhat beside the point, as are cases such as *South Atlantic Steamship Line*, 42 B. T. A. 705, and *Skenandoa Rayon Corporation*, 42 B. T. A. 1287, involving exchanges. She has not said in her briefs just what exchange she thinks took place, but she must reason either that one-half of the original common stock was exchanged for the preferred stock or that all of the original common stock was exchanged for the preferred and a different common stock, with the result, in either case, that the preferred could not have been received as a dividend on any of the original common stock, since that stock disappeared in the exchange. The Commissioner replies that the original common

stock was not exchanged for new common stock and the preferred stock; instead, there was no real change in the common stock; the net result of the transaction was merely the issuance of the preferred stock; and the same result could have been reached directly by simply issuing the preferred stock. The petitioner argues that there was a substantial change in the common stock which made the last 600,000 shares quite different from the original 600,000 shares since each share "represented only half the interest it had formerly represented." She concedes that the stock was the same in all respects save one, that in the beginning the stated value of the 600,000 shares was $6,000,000, whereas, afterwards, the stated value of the then outstanding 600,000 shares was $3,000,000. The question of whether or not for income tax purposes there was any substantial change in the common stock as a result of this transaction thus arises.

The stockholders themselves did nothing. The voting trustees originally held a single certificate for 600,000 shares of common stock having no par value. The following events then took place on the same day: The voting trustees surrendered the certificate for 600,000 shares of common, a certificate for 300,000 shares of no par common, and a certificate for 30,000 shares of preferred were then made; the certificate for 300,000 shares of no par common was immediately canceled and a certificate for 600,000 shares of no par common was issued; changes were made on the books so that the aggregate stated value of $6,000,000, at which the original 600,000 shares of common were carried, was reduced to $3,000,000, and a stated value of $3,000,000 was put on the books for the 30,000 shares preferred. The voting trustees came to the transaction with a single certificate for 600,000 shares of no par common and went away with a certificate for 600,000 shares of no par common and a certificate for 30,000 shares of preferred.

It is proper to look through these steps to see what business purpose was accomplished and also to see what was accomplished for Federal income tax purposes. Cf. *Gregory* v. *Helvering*, 293 U. S. 465; art. 112 (a) (1), Regulations 94. The record fails to disclose any business purpose or substance in the surrender of the original certificate for 600,000 shares of no par common, the issuance of a certificate for 300,000 shares of that stock, the cancellation of that certificate, and the issuance of another certificate for 600,000 shares of the same kind of stock. The same result could have been reached, so far as this record shows, by merely issuing a certificate for 30,000 shares of preferred stock, allowing the voting trustees to retain the original certificate for 600,000 shares of no par common, and making book entries showing that 30,000 shares of preferred represented $3,000,000 of capital and the 600,000 common shares without par value had henceforth a stated value of $3,000,000. The stated value of the common stock could have been reduced without changing the certificate. All sem-

blance of an exchange disappears if the steps taken in regard to the certificates for the common stock are disregarded.

. The stockholders in this transaction in reality surrendered nothing but merely received the new preferred stock. The common stock represented the entire ownership of the corporation prior to this transaction. After the transaction the preferred stock represented ownership to the extent of $3,000,000 only and the entire remaining ownership continued to be represented by the common stock. That is the usual result of a stock dividend. The result is not changed by reason of the devious route taken to accomplish it. Furthermore, the fact that there was a change in the stated value of the common stock on the books of the corporation does not change and is not inconsistent with the conclusion that there was a stock dividend issued.

The Supreme Court held in *Koshland* v. *Helvering*, 298 U. S. 441, that "where a stock dividend gives the stockholder an interest different from that which his former stockholdings represented he receives income." The same Court held later, in *Helvering* v. *Gowran*, 302 U. S. 238, and in *Helvering* v. *Pfeiffer*, 302 U. S. 247, that a stock dividend paid in preferred stock to holders of common stock was income under the Constitution, even though it was exempt from tax under existing revenue acts. See also *Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014. The Court in those cases cited its earlier opinions in *United States* v. *Phellis*, 257 U. S. 156, and *Rockefeller* v. *United States*, 257 U. S. 176, in which the Court had said that the test of taxability of a corporate distribution lies in its effect upon the individual stockholder rather than upon the corporation or the stockholders as a group, and it does not matter that the value of the stock on which the distribution was made was thereby decreased. The normal result of declaring a dividend of any kind is to reduce the value of stock theretofore outstanding. The issuance of the preferred stock in the present case gave to the recipients an interest different from that represented by their former stockholdings. That was the intent and purpose of the change. The corporation had more than sufficient earnings accumulated after February 28, 1913, to pay a dividend equal to the value of this preferred stock. The petitioner concedes that the issuance of stock involving the capitalization of earnings could result in a taxable dividend, but contends that this was a "split-up" involving merely a change in the character and number of shares by which existing capital continued to be represented and was not a taxable dividend. It is immaterial that the corporation did not capitalize any earnings to support the issuance of the preferred stock, since section 115 (b) provides that "every distribution is made out of earnings or profits to the extent thereof." The Commissioner did not err in taxing the distribution of the preferred as a dividend. The value of the stock has been stipulated.

*Decision will be entered for the respondent.*