JACOB FISCHER, PETITIONER, ET AL.[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 102878, 102879, 102880, 102881, 102945, 102946, 102973.

Promulgated April 28, 1942.

---

[1] Proceedings of the following petitioners are consolidated herewith: Carl T. Fischer; John L. Allgeier; Henry Fischer; Ed. J. Roppel; Herman Hornung; and Regina (Mrs. Henry) Fischer.

*Chas I. Dawson, Esq.*, for the petitioners.

*DeWitt M. Evans, Esq.*, and *Frank M. Cavanaugh, Esq.*, for the respondent.

1002

OPINION.

BLACK: The question in all of these proceedings is the same, namely, whether the preferred stock received by the petitioners dur-

ing the taxable year 1936 is taxable to them as a dividend, or whether the receipt by petitioners of the preferred and new common in exchange for the old common was a transaction upon which no gain or loss shall be recognized. If the Board determines that petitioners received the preferred stock and new common stock in a nontaxable reorganization, then the Commissioner concedes that the gains of petitioners on the sale of the stock are taxable as capital gain and that petitioners have correctly computed the gains on the stock which was sold in the taxable year.

The respondent contends, however, that when petitioners exchanged their old common stock for new preferred and new common the fair market value of the preferred represented a taxable stock dividend to petitioners under section 115 (a) and (f) (1) of the Revenue Act of 1936, or, in the alternative, was "essentially equivalent to the distribution of a taxable dividend" under section 115 (g) of the same act. These provisions of the statute are set out in the margin.[1]

On the other hand, the petitioners contend that the readjustment in question was not a distribution of a preferred stock dividend on common stock, but was in fact and reality an exchange, in pursuance of a plan of reorganization, of old common stock in a corporation a party to a reorganization solely for new common and new preferred stock in such corporation, and, that under section 112 of the Revenue Act of 1936 no gain or loss shall be recognized on such an exchange. The material provisions of section 112 are in the margin.[2]

The real question, therefore, is whether the readjustment outlined in our findings of fact was in substance the distribution by the corpo-

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

*　*　*　*　*　*　*

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

*　*　*　*　*　*　*

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

*　*　*　*　*　*　*

ration of a "dividend", and controlled by section 115 of the Revenue Act of 1936, or was an "exchange" of stock for stock and controlled by section 112 of the same statute.

If the readjustment was a distribution by the corporation of a stock dividend, as respondent contends, our decision would have to be for the Commissioner upon the authority of *Koshland* v. *Helvering*, 298 U. S. 441; *Helvering* v. *Gowran*, 302 U. S. 238; *Helvering* v. *Pfeiffer*, 302 U. S. 247; *Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014; Eighth Circuit opinion affirming Board withdrawn, 106 Fed. (2d) 1002; *Albert E. Smith*, 39 B. T. A. 80. For reasons hereinafter given, we do not think that the said readjustment can be held to be a distribution of a stock dividend or a distribution essentially equivalent to the distribution of a taxable dividend under section 115 (g). Therefore, we do not think that the above cases cited by respondent are in point.

We do not think it can reasonably be disputed that both in form and in substance there was an "exchange" of old stock for new stock in the same corporation. In *Baltimore & Ohio Railroad Co.* v. *Western Union Telegraph Co.*, 241 Fed. 162; affirmed per curiam, 242 Fed. 914, the District Court (S. Dist. N. Y.), at p. 170, said:

(a) "Exchange" has a well-settled meaning in common acceptation. Webster's definition is:

"The act of giving or taking one thing for another which is regarded as an equivalent; as an exchange of cattle for grain."

\* \* \* \* \* \* \*

This popular meaning of "exchange" used and understood in the common speech of people has been accepted and defined by Codes and courts. \* \* \*

Petitioners in fact delivered to the corporation their old common stock in the corporation of a par value of $100 per share, and for each share so delivered they received five new shares of common stock of a par value of $10 per share and two new shares of preferred stock of a par value of $25 per share in the same corporation. We hold that this was an "exchange" of stock for stock in the same corporation.

In order for petitioners to avoid recognition of gain or loss under section 112 (b) (3), *supra*, in connection with their exchange of stock solely for stock in the same corporation, it must appear that there

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (D) a recapitalization, \* \* \*

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

was a "reorganization" and that the exchange of stocks was "in pursuance of the plan of reorganization." Section 112 (g) (1), *supra*, defines the term "reorganization" to mean, among several things, "(D) a recapitalization." Under a statute similar to section 112 (g) (1) (D), we held in *H. E. Muchnic, Administrator*, 29 B. T. A. 163, that, where the petitioner in that case exchanged a part of the outstanding common stock of a corporation for previously authorized but then unissued preferred stock of the same corporation, the exchange effected a recapitalization of the corporation constituting a statutory reorganization and was a transaction upon which no gain or loss was recognizable. Our observations in that case are likewise applicable here. Cf. *Walter F. Haass*, 29 B. T. A. 900; affirmed without opinion January 14, 1936.

After briefs were filed in these proceedings, *Strassburger* v. *Commissioner*, 124 Fed. (2d) 315, and *Edith B. Bass*, 45 B. T. A. 1117; on review, C. C. A., 1st Cir., were decided, and the Commissioner by permission amended his brief and cited those two cases, urging them as authorities supporting his position. We think the *Strassburger* case is clearly not in point. It was simply a case where admittedly a dividend on common stock had been paid in preferred stock and the question was whether such dividend was taxable. The Board held that it was and the Second Circuit affirmed. No question of an exchange in reorganization was raised in that case or was in any way involved. The *Strassburger* case is similar to the several cases cited by respondent in his brief which we have already held not to be in point.

The *Bass* case requires more attention. We have carefully considered it and all its facts, and we think it is distinguishable on its facts from the instant case. In the *Bass* case, prior to the alleged reorganization of Bird & Son, Inc., by recapitalization there were outstanding 600,000 shares of no par value common stock. The capital stock account of the corporation showed a stated capital stock of $6,000,000 represented by these 600,000 shares of no par value common stock. When the plan of alleged recapitalization was complete the capital account of the corporation showed $3,000,000 represented by 600,000 shares of no par value common stock and $3,000,000 represented by 30,000 shares of preferred stock. The taxpayer was the owner prior to the alleged reorganization of a voting trust certificate representing 54,510 shares of common stock of the corporation. She surrendered that certificate and received a certificate for 54,510 shares of common stock of no par value and a certificate for 2,725½ shares of preferred stock. We held that the 2,725½ shares of preferred stock which the taxpayer received were received as a dividend on her common stock and were taxable to her

in the amount of the fair market value of such preferred shares. In thus holding, we said, among other things:

\* \* \* The record fails to disclose any business purpose or substance in the surrender of the original certificate for 600,000 shares of no par common, the issuance of a certificate for 300,000 shares of that stock, the cancellation of that certificate, and the issuance of another certificate for 600,000 shares of the same kind of stock. The same result could have been reached, so far as this record shows, by merely issuing a certificate for 30,000 shares of preferred stock, allowing the voting trustees to retain the original certificate for 600,000 shares of no par common, and making book entries showing that 30,000 shares of preferred represented $3,000,000 of capital and the 600,000 common shares without par value had henceforth a stated value of $3,000,000. The stated value of the common stock could have been reduced without changing the certificate. All semblance of an exchange disappears if the steps taken in regard to the certificates for the common stock are disregarded.

In the instant case the facts, unlike those present in the *Bass* case do show a business purpose in the recapitalization. We think this business purpose has been definitely established by competent evidence. Prior to the recapitalization the stock of the corporation was closely held by members of the Fischer family and a few key employees of the corporation. It was desired to have the stock of the corporation more widely held and to establish a ready market for it and at the same time not lose control by those who had built the corporation from a very small beginning and were responsible for its notable success.

Therefore, after consultation among the stockholders themselves and with an established bond company of Kentucky, the plan of recapitalization of the corporation was agreed upon and arrangements were made with the bond company to market the preferred stock along with certain shares of the new common stock. Full details of these plans and their execution are embodied in our findings of fact and need not be repeated here. Suffice it to say that, when the sales of the new stock which it had planned to sell were completed, the corporation had approximately 300 shareholders residing in different parts of the State of Kentucky, instead of 11 shareholders prior to the recapitalization. As a result of these efforts, the business of the corporation became more widely extended in the State of Kentucky and a wider market for the stock of the corporation was established.

In view of these facts, we think respondent's contention that the recapitalization of the corporation was not bona fide and was lacking of any business purpose, and was effected merely to disguise a taxable stock dividend, can not be sustained. We think the facts cited just above and others in the record make the instant case distinguishable from *Edith B. Bass, supra,* and they cause us to reach a conclusion different from the one reached in that case.

The record establishes, we think, that the exchange of the old common stock in the cases at bar for the new common and preferred was in pursuance of a plan of reorganization theretofore agreed upon. The Henry Fischer Packing Co. was a party to its own reorganization as that term is defined in section 112(g)(2), *supra*. We hold, therefore, that under section 112(b)(3), *supra*, no gain or loss shall be recognized upon the exchange made by petitioners, in pursuance of the plan of reorganization, of their old common stock in the corporation a party to the reorganization solely for new common and new preferred stock in the same corporation. From this holding it necessarily follows that the preferred stock received by petitioners did not represent a taxable dividend to petitioners under section 115(a) and (f)(1) of the Revenue Act of 1936 and its issuance was not "essentially equivalent to the distribution of a taxable dividend" under section 115(g) of the same act. Cf. *South Atlantic Steamship Line*, 42 B. T. A. 705; *Skenandoa Rayon Corporation*, 42 B. T. A. 1287; affd., 122 Fed. (2d) 268.

The parties have stipulated that "if the stock was received in a nontaxable reorganization" and we have held that it was so received, then, "the computation of tax in each of said returns was properly made except as indicated in paragraphs 15 and 16, and the note to paragraph 3 hereof." Effect will be given to this part of the stipulation under Rule 50.