

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-2007

# Caldon Inc v. Peerless Ins

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Caldon Inc v. Peerless Ins" (2007). *2007 Decisions.* Paper 1609.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1609

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2250


CALDON, INC.,


*Appellant*
v.


PEERLESS INSURANCE, as successor in interest to
GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA
and as successor in interest to
COMMERCIAL UNION INSURANCE COMPANY


On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 05-cv-00113)
District Judge: Honorable Arthur J. Schwab

Submitted Under Third Circuit LAR 34.1(a)
May 8, 2006

Before: BARRY and SMITH, *Circuit Judges*, and DITTER,[*] *District Judge*


(Filed: February 16, 2007)

————————

OPINION OF THE COURT

————————

————————

[*] Hon. J. William Ditter, Jr., Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

DITTER, *District Judge*.

Caldon, Inc. appeals from a District Court order dismissing its declaratory judgment suit against Peerless Insurance. We will affirm.

FACTS and PROCEDURAL HISTORY

Caldon produces the LEFM Flow Measurement System ("LEFM") which is used by nuclear power plants. In order to construct the system, Caldon engaged Key Technologies, Inc. to provide mechanical engineering and design, and Ionics Inc. to weld the necessary tubing called flow elements. Caldon contracted with two electric generating companies to supply the LEFM: Exelon Nuclear[1] for its station in Delta, Pennsylvania, and that of Progress Energy Service Company near Hartsville, South Carolina.[2]

During this time Caldon was insured by the defendant, Peerless Insurance, for $2,000,000 under a commercial general liability policy and for $2,000,000 additional coverage under a commercial umbrella policy. In the winter of 2002, a number of welds on the flow elements failed causing damage in Exelon's plant and that of Progress Energy. Caldon submitted a letter to Peerless on May 19, 2003, providing notice that it

---

[1] The complaint refers to both "Excelon Nuclear" and "Exelon." Judge Schwab's opinions refer to the company as "Excelon." However, the correct spelling is "Exelon" and is used throughout this opinion.

[2] At the times important in this matter, Progress Energy was known as Carolina Power & Light Company. For the sake of simplicity we will refer to it as Progress Energy.

had a claim for damage to its equipment and property. On December 29, 2003, Peerless denied the claim and explained its reasoning in a thirty-eight page letter. (App. 223-260). In essence, Peerless said its insurance covered Caldon's liability for damages to others, but not Caldon's damages to its own equipment. Caldon then filed suit against Peerless (C.A. No. 04-1138, W.D. Pa. Nov. 5, 2004), seeking a declaration that the Peerless policies provided coverage for damages to Caldon's property. It also noted that Caldon would incur additional repair and loss of generating capacity expenses although at that time no claim or demand had been presented by either Exelon or Progress. (Compl. at ¶ 40; App. 5)

The District Court found that the policies did not cover Caldon's claim for damages to *its own* product or costs associated with fixing *its own* system and therefore granted defendant's motion to dismiss without prejudice. Caldon then filed a second complaint for declaratory judgment stating that Exelon and Progress Energy had asserted claims against it. Again, the District Court granted Peerless' motion to dismiss, holding that Caldon's claim was premature because Caldon had failed to notify Peerless of the third party claims of Exelon and Progress, a requirement of the Peerless policies. (App. 005). Caldon filed a timely appeal bringing the matter before us.

### DISCUSSION

Caldon alleges in paragraph 43 of its complaint that insurance in the amount of $2,000,000 was provided to it by a "Commercial General Liability" policy issued by

Peerless. The Insuring Agreement of that policy states:

> We will pay those sums that the insured becomes **legally obligated** to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[3] (emphasis added).

There is no allegation in the complaint that Caldon is legally obligated to pay any damages to anyone.

Paragraph 29 alleges that as a result of the deficiencies of Caldon's subcontractors, there was damage to Caldon's and Exelon's property. Although Paragraph 32 alleges that Caldon and Exelon have repaired the damage at Exelon's facility, Paragraph 31 asserts that Exelon has demanded $2,868,278 for property damage it suffered.

Paragraphs 33 through 39 and 41 detail how the defective welding performed by Caldon's subcontractor, Ionics, caused damage to Progress' plant for which Caldon assumes responsibility in Paragraph 42. Paragraph 40 sets forth that Progress has demanded $368,000 from Caldon for the damages to the Progress facility.

The fact remains, however, that there is no assertion that Caldon is legally

---

[3] In Paragraph 44 of its complaint, Caldon alleges that the Peerless umbrella policy provides an additional $2,000,000 in coverage. That policy has a similar insuring agreement, i.e., "We will pay the sums that the "insured" becomes **legally obligated** to pay as damages in excess of 'underlying insurance' . . . because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies." (Emphasis added)

-4-

obligated to pay the claim of either Exelon or Progress.

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court clarified the purpose of the rule, noting the "Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (U.S. 1957).

In this Circuit we have explained:

> Just as a pleading must "be construed as to do substantial justice," a plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery. This is especially so if the material deficiencies in the complaint stem from nothing more than inartful pleading – the precise sort of pleading as a highly developed form of art that the federal rules sought to abandon.

*Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124-25 (3d Cir. 1998) (internal citations omitted).

However, other courts have cautioned that "the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a) does not invite plaintiffs to use clever omissions and cynical pleading practices to overcome otherwise valid motions to dismiss." *Sapiro v. Encompass Ins.*, 2004 U.S. Dist. LEXIS 22054, *17 (N.D. Cal. Nov. 2, 2004) (internal quotations and citations omitted). Further, in discussing the art of clever pleading in relation to removal jurisdiction, another District Court

stated "(c)lever pleading, of course, is neither unethical nor illegal – it is, in fact, good lawyering.  But good lawyering should not defeat good judging, which requires a court to call things as it sees them."  *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 825 (E.D. Va. 2005).

At best, this complaint amounts to a purposeful side-step by Caldon's attorneys, not a misstep to be overlooked by the rule of liberal pleading.  Here, we are presented with the same attorneys, the same parties, the same District Court Judge, and the same occurrence as in Caldon's first suit against Peerless.  There, the District Court dismissed Caldon's claim, not only holding that the policy did not cover claims for damages to Caldon's own property but observing that "there is no coverage at this time because the insured is not legally obligated to pay damages now.  If and when a claim is made by Excelon [sic] and [Progress Energy] or another third party, the parties are free to take whatever legal action they believe is legally appropriate at that time."

Having been put on notice by the District Court of the need to aver that there was a legal obligation to pay damages, surely Caldon's attorneys would have alleged that duty had they been able to do so.  If somehow they had overlooked the vital "legally obligated" language, they would have amended their complaint.  Instead, to avoid stating what they apparently cannot, they have "artfully" written the complaint to provide only an inference of a meritorious claim where no such a

claim exists.

The complaint is therefore fatally defective for failing to allege a condition that is necessary for Caldon to prevail, namely that Caldon is legally obligated to pay a third party.

The District Court dismissed the complaint holding that Caldon's failure to provide notice of claims by Exelon and Progress Energy, a requirement of the Peerless policy, rendered the case unripe. We base our holding on the ground that Caldon has failed to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). "[I]f the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245 (1937). *See also Erie Telecomms. v. Erie*, 853 F.2d 1084, 1089 (3d Cir. 1988) (citing *Helvering* and other cases). Therefore, although we reach the same conclusion as did the District Court, we believe the result is better explained in the terms of a simple failure to plead rather than in the more complicated terms of ripeness.