**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1801
_____

MOHAMMED UDDIN; ARSHIA UDDIN,

Appellants

v.

DIRECTOR OF THE BUREAU OF CITIZENSHIP AND IMMIGRATION;
DIRECTOR OF THE ADMINISTRATIVE APPEALS OFFICE OF CIS;
DIRECTOR OF THE PHILADELPHIA OFFICE OF CIS

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-06-cv-05275)
District Judge:  Hon. Anita B. Brody

Submitted March 15, 2011

Before:  RENDELL, BARRY, and CHAGARES, Circuit Judges.

(Filed July 15, 2011 )

_____

OPINION
_____

CHAGARES, Circuit Judge.

Mohammed and Arshia Uddin (the "Uddins") filed this action on December 1,

2006, seeking relief pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-06,

following the denial of their applications for adjustment of status by United States Citizenship and Immigration Services ("USCIS"). The District Court dismissed the Uddins' complaint for lack of jurisdiction, finding that they had failed to exhaust their administrative remedies. We will vacate the judgment of the District Court and remand for a decision on the merits.

I.

Because we write solely for the parties' benefit, we will only briefly recite the essential facts. Mohammed Uddin, a native of Pakistan, entered the United States without inspection in 1984. Within a year after his arrival in the United States, Mr. Uddin found employment as a retail store manager with Jembro Stores, Inc. This is the only employment he has ever had in the United States.

On December 29, 1987, despite having never been employed as a farmworker in the United States, Mr. Uddin applied for benefits under the Special Agricultural Worker (SAW) amnesty program, which was established by Congress in the Immigration Reform and Control Act (IRCA) of 1986, 8 U.S.C. § 1160, to provide alien farmworkers with lawful residence. See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 483 (1991). As a result of his SAW application, Mr. Uddin was issued three I-688A employment authorization cards. These cards authorized SAW applicants to work in the United States while their application remained pending. The first I-688A was issued to Mr. Uddin on the day of his application, the second on November 2, 1988, and the last on October 3, 1990. On April 13, 1990, his SAW application was officially denied.

2

On December 3, 1996, Mr. Uddin was taken into custody by the USCIS because he was not a legal resident of the United States. USCIS issued him an Order to Show Cause and told him to await notice of a hearing date before an Immigration Judge ("IJ"). Mr. Uddin alleges that he never received the notice and, accordingly, he did not appear for the hearing. An Order of Deportation was entered against him, in absentia, on May 13, 1997. Mr. Uddin appealed this order.

It is unclear from the record what transpired in the intervening four years, but by the spring of 2001, Mr. Uddin was in the midst of removal proceedings before an IJ. The IJ terminated these removal proceedings with the consent of the parties in order to permit Mr. Uddin to submit an I-485 application, based on his employment with Jembro Stores, for a discretionary adjustment of status to permanent residency, pursuant to 8 U.S.C. § 1255(a).[1] Shortly thereafter, Mrs. Uddin also submitted an I-485 application, which was derivative of her husband's.

USCIS officials did not interview the Uddins with regard to their I-485 applications until March 14, 2005. During the interview, Mr. Uddin was asked to explain why he had applied for and received benefits under the SAW program, despite the fact that he appeared never to have been employed as a farmworker in the United States. USCIS was unsatisfied with Mr. Uddin's attempt to explain this discrepancy. It thus

---

[1] That section provides that the "status of an alien...may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

declared Mr. Uddin ineligible for an adjustment of status on August 29, 2005, on the ground that he was inadmissible to the United States because he obtained immigration benefits through the SAW program either by fraud or by willfully misrepresenting a material fact. See 8 U.S.C. § 1182(a)(6)(C)(i).

One month later, Mr. Uddin filed a motion to reconsider the denial of his adjustment of status application with USCIS. Having received no decision on the motion for reconsideration, the Uddins filed the present action before the District Court on December 1, 2006, seeking, in relevant part, a declaratory judgment that USCIS acted arbitrarily and capriciously in denying their applications for adjustment of status because the denial was premised upon consideration of information contained in Mr. Uddin's SAW application, in violation of pertinent statutory confidentiality provisions.

The District Court stayed proceedings pending a resolution of Mr. Uddin's motion for reconsideration, which USCIS denied on June 8, 2007. USCIS again reiterated its finding that Mr. Uddin was ineligible for adjustment of status because he fraudulently or willfully misrepresented a material fact in an application for immigration benefits. It additionally denied the application for adjustment of status as a matter of agency discretion, relying on Mr. Uddin's alleged fraud as a "a very serious negative factor to be weighted heavily in an application for discretionary immigration benefits." Supplemental Appendix ("App."), 99. Because Mrs. Uddin's adjustment application was derivative of her husband's, it was similarly denied. In accordance with this decision, the Government again initiated removal proceedings against the Uddins on September 6, 2007, and served

4

each with a Notice to Appear.  These removal proceedings remain pending before an Immigration Judge.

Following the denial of the motion for reconsideration, the District Court reopened this action, but dismissed the complaint on January 20, 2010, finding that the Uddins had failed to exhaust their administrative remedies.  The District Court concluded that the Uddins should first seek review of the denial of their adjustment applications before the IJ in the course of removal proceedings.

On appeal, the Uddins assert, and USCIS concedes, that the District Court's holding as to exhaustion was in error because 8 C.F.R. § 1245.2(a)(1)(ii) bars the Immigration Court from exercising jurisdiction over the adjustment application of an "arriving alien," such as Mr. Uddin.[2]  Thus, USCIS's decision, which explicitly stated that it may not be appealed, constituted final agency action and the Uddins had indeed exhausted their administrative remedies.  The Uddins therefore contend that remand is appropriate so that the District Court may address, in the first instance, the merits of their claim that USCIS unlawfully made use of confidential information from Mr. Uddin's SAW application in adjudicating the application for adjustment of status.[3]

II.

---

[2] The regulation provides for a very limited exception in which the Immigration Court does have jurisdiction over an arriving alien's application for adjustment of status, but the parties have not argued that this exception applies to Mr. Uddin.  See 8 C.F.R. 1245.2(a)(1)(ii)(A-D).

[3] The Uddins took issue with other aspects of the District Court's decision in their Notice of Appeal, but having failed to address them in the opening brief, such other grievances have been waived.  See United States v. Pellulo, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well-settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

5

Notwithstanding the District Court's erroneous conclusion that the Uddins failed to exhaust their administrative remedies prior to filing this action, USCIS urges this court to affirm the order of dismissal on alternative grounds. See Helvering v. Gowran, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."). Specifically, USCIS argues that it denied Mr. Uddin's adjustment application, not only because it concluded that he was statutorily ineligible for adjustment, but also because it determined that he did not merit a favorable exercise of discretion, regardless of his eligibility. USCIS further argues that, pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), the District Court lacked jurisdiction to review such a discretionary denial. We disagree.

The federal courts are without power to review USCIS' discretionary "judgment regarding the granting of [adjustment of status] relief[.]" 8 U.S.C. § 1252(a)(2)(B)(i); see also Pinho v. Gonzales, 432 F.3d 193, 203-04 (3d Cir. 2005). But we have been careful to distinguish "between a denial of an application to adjust status, and a determination that an immigrant is legally ineligible for adjustment of status" in the first instance. Pinho, 432 F.3d at 203. The former is a decision committed to the discretion of the agency that, as we said, we are without jurisdiction to review. See id. In contrast, the federal courts retain jurisdiction over the latter because the immigrant's eligibility for adjustment of status is a purely legal threshold inquiry, "governed directly by the applicable statute[,]" that "does not implicate agency discretion." Id. at 203-04.

6

USCIS concedes that its denial of Mr. Uddin's adjustment application was premised in part on a finding that he was rendered statutorily ineligible for adjustment by 8 U.S.C. § 1182(a)(6)(C)(i). But USCIS contends that the District Court was still without jurisdiction to hear the claim because it alternatively premised the denial of Mr. Uddin's adjustment application on independent discretionary grounds.

We recognize that "[a]djustment of status is . . . a matter of administrative grace, not mere statutory eligibility." See Ameeriar v. INS, 438 F.2d 1028, 1030 (3d Cir. 1971). Indeed, the agency may deny adjustment to an alien, though he meets the statutory requirements for eligibility, merely because the agency determines that the circumstances presented by the alien's application do not merit a favorable exercise of discretion. See Elkins v. Moreno, 435 U.S. 647, 667 (1978); see also 8 U.S.C. § 1255(a) (providing that the status of an alien "may be adjusted by the Attorney General in his discretion"). Thus, when the agency ruling is based on an independent discretionary ground, we are without jurisdiction to review it, even if that ruling also contains a determination that the alien is ineligible for adjustment. Importantly, however, "we retain jurisdiction over denials of adjustment of status applications even[,] when the denial is based in part on a matter of discretion[,] when the discretionary determination is based on the same grounds as the eligibility determination." Yang v. Mukasey, 514 F.3d 278, 279 (2d Cir. 2008) (per curiam); see also Hernandez v. Ashcroft, 345 F.3d 824, 845-47 (9th Cir. 2003). Any other rule would allow the agency to insulate its non-discretionary statutory eligibility analysis from judicial review simply by labeling the decision discretionary. See Hernandez, 345 F.3d at 846.

7

In assessing Mr. Uddin's application, USCIS first found him to be ineligible for adjustment of status because he was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i). USCIS then went on to state that, even if Mr. Uddin were statutorily eligible, the circumstances presented by his application did not merit a favorable exercise of discretion. To reach this conclusion, USCIS engaged in a balancing exercise, weighing the positive factors — Mr. Uddin has four children who are United States citizens and has resided in the United States for over two decades — against the negative factors — Mr. Uddin entered the country unlawfully, obtained unlawful employment, gained SAW Program benefits and attempted to establish eligibility for lawful residence by fraud or willful misrepresentation, and was less than forthright in the interview that accompanied his adjustment application — before concluding that the weight of the negative factors precluded it from exercising its discretion in his favor.

Admittedly, USCIS mentioned two factors, independent of the alleged fraud, that weighed against discretionary relief — namely, Mr. Uddin's unlawful entry to the United States and his unlawful employment while here. But it is nonetheless clear from the administrative record that Mr. Uddin's alleged fraud — the very same that formed the basis for the eligibility determination — was in fact the motivating force behind USCIS' "discretionary" denial of adjustment of status. Because USCIS' discretionary determination was, therefore, based on the same grounds as the eligibility determination, we retain jurisdiction over the denial of Mr. Uddin's adjustment of status application.

8

See Yang, 514 F.3d at 279; Hernandez, 345 F.3d at 845-47. [4] Accordingly, we will vacate the judgment of the District Court, insofar as it found jurisdiction to be lacking, and remand for a decision on the merits of the Uddins' claim that USCIS unlawfully made use of confidential information from Mr. Uddin's SAW application in adjudicating their applications for adjustment of status.

III.

For the foregoing reasons, we will vacate the judgment of the District Court and remand for further proceedings.

---

[4] Because the District Court had jurisdiction to review the denial of Mr. Uddin's application, it also had jurisdiction to review the denial of his wife's derivative application.